**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

Case No. 5:22-cv-00731-PRW

RX MEDICAL, LLC, ROK SALES, LLC,
AND ROK MEDICAL MANAGEMENT, LLC,
Plaintiffs,

v.

ROBEN MELTON, JUSTIN POOS, BRADY CLINE, TODD PERRY,
SHELBY BULLARD, GREG MASON, JOSHUA MCDONALD,
KRISTY MOORE, DIGSS INVESTMENTS, LLC, STRYKER CORPORATION,
SUMMIT SPINE SOLUTIONS, LLC, and RD MEDICAL, LLC;
Defendants.

**DEFENDANTS' EMERGENCY MOTION TO DISSOLVE
*EX PARTE* TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

Kiran A. Phansalkar, OBA #11470
J. Dillon Curran, OBA #19442
Preston M. Sullivan, OBA #33489
Conner & Winters, LLP
1700 One Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone: (405) 272-5711
Facsimile: (405) 232-2695
Email: kphansalkar@cwlaw.com
dcurran@cwlaw.com
psullivan@cwlaw.com

and

Michael D. Wexler, IL #6207847
*(pending admission pro hac vice)*
Kevin J. Mahoney, IL #6299398
*(pending admission pro hac vice)*
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
Email: kmahoney@seyfarth.com
mwexler@seyfarth.com

***Attorneys for Defendants Roben Melton, Justin Poos, Brady Cline, Todd Perry,
Shelby Bullard, Greg Mason, Joshua McDonald, Kristy Moore, DIGSS Investments,
LLC, Stryker Corporation, Summit Spine Solutions, LLC, and RD Medical, LLC***

August 25, 2022

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................... 4

ARGUMENT ...................................................................................................... 8

    A.    The *Ex Parte* Temporary Restraining Order Should be Dissolved Because Plaintiffs' Claims are Not Likely to Succeed. ............................ 10

        1.    The TRO Imposes Non-Solicit Restrictions on Individual Defendants Who Never Entered Into an Agreement Let Alone an Agreement Containing Such Terms. ........................ 10

        2.    The Post-Employment Restrictions that Plaintiffs Rely On are Unenforceable. ................................................. 11

        3.    Plaintiffs' Extra-Contractual Claims are Also Unlikely to Succeed.................................................................... 16

    B.    The *Ex Parte* Temporary Injunction Should be Dissolved Because It is Overbroad and Improper on its Face, and Gives No Explanation why it was Granted *Ex Parte*.............................................................. 17

    C.    The *Ex Parte* Temporary Restraining Order Should be Dissolved Because it Does not Provide for Any Bond or Security.............................. 19

CONCLUSION AND PRAYER FOR RELIEF .............................................. 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Autry v. Acosta*,
    2018 OK CIV APP 8, 410 P.3d 1017 ................................................................ 12, 13, 14

*Bayly, Martin & Fay, Inc. v. Pickard*,
    1989 OK 122, 780 P.2d 1168 .......................................................................... 15

*Dowell v. Pletcher*,
    2013 OK 50, 304 P.3d 457 ............................................................................. 16

*EPRO Servs., Inc. v. Regenesis Bioremediation Prod.*,
    No. 19-1220-EFM, 2019 WL 4054030 (D. Kan. Aug. 28, 2019) .............................. 9, 19

*Granny Goose Foods, Inc. v. Local No. 70, Brotherhood of Teamsters*,
    415 U.S. 423 (1974) .................................................................................. 8, 9

*Howard v. Nitro-Lift Techs.*, L.L.C.,
    2011 OK 98, 273 P.3d 20 ............................................................................. 15

*North Dakota v. U.S. Army Corps of Eng'rs*,
    264 F.Supp.2d 871 (D.N.D. 2003) ................................................................... 9

*Pre-Paid Legal Servs., Inc. v. Worre*,
    No. 05-0875, 2006 WL 3227903 (W.D. Okla. Nov. 3, 2006) ................................... 14

*TruGreen v. Oklahoma Landscape*,
    526 F. Supp. 3d 1080 (N.D. Okla. 2021) ........................................................... 12

*Wallace v. Microsoft Corp.*,
    596 F.3d 703 (10th Cir. 2010) ....................................................................... 9

**<u>Statutes</u>**

12 O.S. § 1384(C) .......................................................................................... 18

28 U.S.C. § 1450 ............................................................................................ 8

**<u>Rules</u>**

Fed. R. Civ. P. 65 ..................................................................................... 9, 18, 19

**DEFENDANTS' EMERGENCY MOTION TO DISSOLVE**
***EX PARTE* TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT**

Defendants Rob Melton, Justin Poos, Brady Cline, Todd Perry, Shelby Bullard, Greg Mason, Josh McDonald, Kristy Moore, DIGSS Investments, LLC, Stryker Corporation, Summit Spine Solutions, LLC, and RD Medical, LLC ("Defendants"), by their attorneys and pursuant to Federal Rule of Civil Procedure 65(b)(4), respectfully move this Court to dissolve the *Ex Parte* Temporary Restraining Order (the "TRO") entered against them by the District Court of Oklahoma County, Oklahoma. For the reasons set forth in the accompanying Memorandum of Law in support of this Motion, the *ex parte* TRO should be dissolved because (1) the non-solicitation and non-competition restrictions that Plaintiffs rely upon are plainly unenforceable under Oklahoma law, and Plaintiffs' other claims are equally unlikely to succeed; (2) the TRO is overbroad and invalid on its face under both Oklahoma and federal law; and (3) the TRO was entered with no bond, no time limit, and no findings. Pursuant to Rule 65(b)(4), and because the TRO was entered without notice to Defendants or any opportunity to be heard, Defendants respectfully request that this Court set this Motion for expedited consideration.

## **INTRODUCTION**

Plaintiffs improperly obtained an *ex parte* Temporary Restraining Order from a state court barring Defendants from working.  Plaintiffs' case rests almost entirely upon contractual provisions, but the restrictions are void and unenforceable under black letter law.  Worse, multiple Defendants subject to the TRO have no contracts with Plaintiffs, yet are subject to the same non-solicitation restrictions in the TRO. The TRO should be

dissolved for at least three reasons: (1) the non-solicitation and non-competition restrictions that Plaintiffs rely upon are plainly unenforceable under Oklahoma law, and Plaintiffs' other claims are equally unlikely to succeed; (2) the TRO is overbroad and invalid on its face under both Oklahoma and federal law; and (3) the TRO was entered with no bond, no time limit, and no findings whatsoever.

Defendants Melton, Poos, Cline, Perry, Bullard, Mason, McDonald, and Moore ("the Individual Defendants") are former employees of Plaintiff RX Medical, for whom they (with the exception of Moore)[1] sold spinal surgical equipment in and around Oklahoma City. On August 12, 2022, the Individual Defendants notified Plaintiffs that they were resigning their employment, and thereafter joined Stryker.[2]

On August 19, 2022, Plaintiffs filed a Petition[3] in the District Court for the District of Oklahoma County ("the state court"), alleging that the Individual Defendants had conspired with Stryker and three other entities—DIGSS Investments, LLC ("DIGSS"), RD Medical, LLC ("RD Medical") and Summit Spine Solutions, LLC ("Summit") (these three entities collectively "the Corporate Defendants")—to misappropriate and use Plaintiffs' confidential information and equipment. Plaintiff's Petition also alleges that four of the

---

[1] As explained below, Ms. Moore's role at RX Medical (and at Summit Spine) is purely administrative: she had no role in soliciting customers for RX Medical and has no such role at Summit Spine.

[2] Plaintiffs allege that the Individual Defendants are employed by Stryker Corporation and names Stryker Corporation as a Defendant on that basis. To be clear, the Individual Defendants who joined Stryker are employed by Stryker Employment Company, LLC, not Stryker Corporation. Defendant Moore does not work for any Stryker entity—she is employed by Defendant Summit Spine.

[3] See Notice of Removal, Exhibit 1 [Dkt. No. 1-1].

Individual Defendants—Messrs. Melton, Poos, Cline, and Perry—breached non-solicitation restrictions in their agreements with RX Medical.  As explained in further detail below, the alleged contractual restrictions are unenforceable under Oklahoma law, and the Petition provides little to no detail regarding **what** confidential information or equipment the Individual Defendants allegedly misappropriated, when they did so, or how they were using it in their new employment.

The same day that they filed the Petition in the state court, Plaintiffs also filed an "Emergency Motion for Temporary Injunction with Brief in Support."[4] Notably, that same day Plaintiffs also filed a "Notice of Hearing" indicating that their Motion would be heard by the state court on the morning of August 23, 2022.  Plaintiffs did **not** move for an *ex parte* temporary restraining order, or indicate in any way that they planned to appear before the state court on their motion at any time before the hearing noticed for August 23, 2022. Yet, the same day that the Petition and Motion were filed, the state court entered an *ex parte* Temporary Restraining Order ("the TRO") without any notice to the Defendants that it would be heard that day, and without Plaintiffs having moved for an *ex parte* TRO in the first place.  The TRO entered by the state court does not require Plaintiffs to post any bond or security, and gives no reasoning as to why it was entered *ex parte*. More concerning yet, the TRO imposes non-solicitation restrictions of half of the Individual Defendants **even though they never entered into agreements to that effect with the Plaintiffs**.

---

[4] See Notice of Removal, Exhibit 3 [Dkt. No. 1-3].

As a result of the state court's overbroad and vague TRO, the Individual Defendants are immediately barred from soliciting any of Plaintiffs' alleged "established customers" *regardless* of whether they signed non-solicitation agreements, and the TRO gives no indication of who those established customers are. Moreover, and even though Oklahoma law only permits restrictions on active solicitation, Plaintiffs are now demanding that the Individual Defendants stop *any* interaction with surgeon customers (and, as explained below, third-party vendors as well), threatening to seek a contempt order if the Individual Defendants attend any previously-scheduled surgeries. As a result, the Individual Defendants cannot attend scheduled spinal surgeries where they were to be present to assist surgeons with any questions about the equipment being used.  Simply put, the obvious overbreadth of the state court injunction order is risking harm to third-party patients with scheduled surgeries: the state court order does not even consider this issue.  Simply put, the state court's order was clearly in error, and should be dissolved immediately.

## **FACTUAL AND PROCEDURAL BACKGROUND**

*The Individual Defendants' Employment at RX Medical*

The Individual Defendants[5] are all sales representatives or sales managers for surgical spine products.  (Declaration of J. Poos attached hereto as **Exhibit 1**, ¶ 3.) These products are used by orthopaedic surgeons and neurosurgeons in surgeries involving the spine.  (*Id.*) The role of a surgical sales representative, like the Individual Defendants, goes

---

[5] Again, the exception is Defendant Kristy Moore, who worked purely in an administrative capacity, did not solicit customers for RX Medical, and does not solicit customers for Summit Spine.  For ease of reference, and because the Petition and TRO refer to Ms. Moore along with the other Individual Defendants as a single group, this brief will do so as well.

far beyond just meeting with customers and making sales of products. (*Id.* ¶ 4.) The Individual Defendants also attend procedures with their surgeon customers and assist those surgeons with any questions or issues that may arise regarding the equipment being used. (*Id.*) In that role, the Individual Defendants are a critical part of ensuring the best results for patients undergoing major surgeries of the spine. (*Id.*)

The Individual Defendants were formerly employed by Plaintiff RX Medical in and around Oklahoma City, Oklahoma. (*Id.* ¶¶ 5 and 6.) Defendant Poos managed Defendants Melton and Cline, who in turn each managed a team of sales associates including Defendants Perry, Bullard, Mason, and McDonald. (*Id.* ¶ 6.) Defendant Moore had no role whatsoever in sales, but instead was assigned to office administrative functions. (*Id.*) RX Medical is, and was while the Individual Defendants worked there, a distributor of surgical spine products for the equipment manufacturer ZimVie, Inc. ("ZimVie"). (*Id.* ¶ 7.) In addition to products manufactured by ZimVie, RX Medical also offered certain products from other medical device manufacturers for those instances where ZimVie did not offer a particular product. (*Id.*)

Three of the Individual Defendants—Melton, Poos, and Cline—entered into purported Employee Non-Compete Agreements with RX Medical. (Petition, ¶ 20 and Ex. 1.) Those agreements restrict Melton, Poos, and Cline from competing against RX Medical, with competition defined as:

> "The term 'not compete' as used in this agreement shall mean that I shall not **directly or indirectly**, or in any capacity, on my own behalf or on behalf of any other firm undertake or assist in the solicitation of **any client or account of the Firm existing during the course of my employment with Rx**

        **Medical**.  This non-compete agreement shall remain in full force and in effect for one year commencing with the date of employment termination."

(Petition, Ex. A) (emphasis added).

        Defendant Perry's agreement with RX Medical is even broader: it prohibits Mr. Perry from "directly or indirectly soliciting" not just customers of RX Medical, but customers of Zimmer (the alleged predecessor of ZimVie) as well, regardless of whether or not he ever had any contact with those customers.  (Petition at Ex. B, p. 5).  Mr. Perry's agreement also has a non-competition provision that bars him from working for a competitor anywhere in his former assigned territory, regardless of whether such work involved contacting Plaintiffs' customers.  (*Id*.) Defendants Bullard, Mason, McDonald, and Moore have no non-solicitation or non-competition restrictions whatsoever, nor do Plaintiffs allege as much.

*The Individual Defendants Join Stryker*

        In August of 2022, dissatisfied with management at RX Medical, the Individual Defendants decided to join Stryker.[6] (Poos Decl., Ex. 1, ¶ 8.) On August 12, 2022, the Individual Defendants submitted their resignations to RX Medical, effective that day, and joined Stryker the next business day.  (*Id.*)

        To be clear, the Individual Defendants are ***not*** employed by Defendants Summit Spine, RD Medical, or DIGSS—Summit Spine is an independent Stryker agency in Oklahoma City, but the Individual Defendants do not make sales on behalf of Summit

---

[6] Again, with the exception of Defendant Moore, who did not join Stryker but instead joined Defendant Summit Spine.

Spine. (*Id.*, ¶ 9.) RD Medical and DIGSS (which is owned by Defendants Melton and Poos) distribute other surgical products, but neither the Petition or Motion give any explanation why the Corporate Defendants are named in this case. (*Id.*) While Plaintiffs allege in conclusory fashion that all of the Defendants began converting Plaintiffs' customers to Stryker products prior to the resignations of the Individual Defendants from RX Medical, neither the Petition nor Emergency Motion filed with the state court provide any details on who those customers are, what was done to allegedly convert them, by whom, or when. Similarly, Plaintiffs allege that the Individual Defendants deleted information from Plaintiffs' computer systems regarding scheduled surgeries before their departure in an effort to somehow sabotage Plaintiffs' operations.  Those allegations are false, but putting that issue aside, neither the Petition nor the Emergency Motion provide anything more than perfunctory allegations that such activity occurred, without any details as to who allegedly did so or what information was affected.

*Plaintiffs File Suit and Improperly Obtain an Ex Parte TRO*

On August 19, 2022, Plaintiffs filed three documents in the state court: (1) the Petition, (2) the Emergency Motion for Temporary Restraining Order and Temporary Injunction, and (3) a Notice of Hearing indicating that a hearing was set on Plaintiffs' Emergency Motion for August 23rd at 10:15 a.m.   (*See* Notice attached hereto as **Exhibit 2**.) Plaintiffs did ***not*** file any Motion for an *ex parte* hearing, did not give any indication that any hearing would be held before the noticed date of August 23rd, and did not claim that notice for a hearing on August 19th had been given or was impractical under the circumstances.  (*Id.*)

Despite that, and without any notice to the Defendants, the state court entered an *ex parte* TRO that same day.  (*See* Temporary Restraining Order attached hereto as **Exhibit 3**.) The TRO orders the Individual Defendants to immediately cease and desist from "directly soliciting any person or company who was an established customer of Plaintiffs" without giving any indication of who those customers are.  (*Id.*, ¶ 1.) Moreover, the TRO enters that relief against Defendants who do not have non-solicit agreements with Plaintiff in the first place: Defendants Bullard, Mason, McDonald, and Moore.  The Order makes no findings at all as to what immediate and irreparable harm Plaintiffs were facing, nor any reason why notice of a hearing that day could not be given. (*Id.*) Despite ordering the Individual Defendants to stop soliciting any of Plaintiff's established customers, and ordering Stryker and the Corporate Defendants to stop "assisting with, or participating in" that solicitation, the TRO does ***not*** require the Plaintiffs to post any kind of bond or security.  On the basis of original federal jurisdiction over Plaintiff's claims (Plaintiff asserts a claim against all the Defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*), Defendants removed this matter to this Court on August 23, 2022. (Dkt. 1.)

## ARGUMENT

After removal, a TRO granted by a state court remains in force no longer than it would have under state law, but in no event longer than the limitations provided for in Federal Rule 65(b), as measured by the date of removal.  *Granny Goose Foods, Inc. v. Local No. 70, Brotherhood of Teamsters*, 415 U.S. 423, 439-440 (1974); 28 U.S.C. § 1450. "After the removal of an action from state court ... the case will proceed as if it originally

had been brought in the federal court." *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010) ("Thus, it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters.") Critically, when evaluating a motion to dissolve a TRO issued by a state court prior to removal, "federal law is applied as though the action was originally commenced [in federal court]." *EPRO Servs., Inc. v. Regenesis Bioremediation Prod.*, No. 19-1220-EFM, 2019 WL 4054030, at *2 (D. Kan. Aug. 28, 2019) (citing C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3738.) Furthermore, on a motion to dissolve a TRO, the party that obtained the TRO "bears the burden of justifying the need for continued injunctive relief on a temporary basis." *North Dakota v. U.S. Army Corps of Eng'rs*, 264 F.Supp.2d 871, 879 (D.N.D. 2003).)

Because the TRO was granted *ex parte*, Rule 65(b)(4) permits Defendants to appear and move to dissolve the order on 2 days' notice to Plaintiffs. FED. R. CIV. P. 65(b). These deadlines reflect the extraordinary nature of obtaining *ex parte* relief in the first place: "[t]he stringent restrictions imposed by s 17, and now by Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc.*, 415 U.S. at 438–39. Here, the temporary restraining order entered by the state court should be dissolved for at least three reasons: (1) the non-solicitation and non-competition restrictions that Plaintiffs rely upon are plainly unenforceable under Oklahoma law, and Plaintiffs' other claims are equally unlikely to succeed; (2) the TRO is overbroad and invalid on its face under both

Oklahoma and federal law; (3) the TRO was entered with no bond, no time limit, and no findings whatsoever.

**A.     The *Ex Parte* Temporary Restraining Order Should be Dissolved Because Plaintiffs' Claims are Not Likely to Succeed.**

The TRO entered by the state court should be dissolved first and foremost because Plaintiffs are unlikely to succeed on the merits of their claims. Plaintiffs' allegations, and the basis for the relief granted by the TRO, are almost entirely predicated upon non-solicitation restrictions in agreements between Plaintiff RX Medical and four of the Individual Defendants. As explained below, none of those agreements are unenforceable under Oklahoma law, and the TRO entered on the basis of those claims should be dissolved.

**1.     The TRO Imposes Non-Solicit Restrictions on Individual Defendants Who Never Entered Into an Agreement Let Alone an Agreement Containing Such Terms.**

At the outset, the TRO entered by the state court also prohibits Defendants Bullard, Mason, McDonald, and Moore from soliciting any of Plaintiffs' established customers. Yet those Defendants do not have non-solicitation agreements with any of the Plaintiffs: indeed, Plaintiffs never allege as much anywhere in their Petition or Motion.[7] Despite that, the state court entered injunctive relief against those Defendants prohibiting them from soliciting Plaintiffs' established customers, without providing any explanation or rationale

---

[7] Plaintiffs' Emergency Motion never explains, or even argues, why it would succeed on the merits of non-existent agreements with Defendants Bullard, Mason, McDonald, or Moore. Indeed, Plaintiffs' Motion details the contractual restrictions against Melton, Poos, Cline, and Perry, but then without explanation simply concludes that Plaintiffs are likely to succeed on the merits of all their claims and that a non-solicitation injunction should be entered against *all* the Individual Defendants. (Motion, p. 14.)

as to why those Defendants should be enjoined on the basis of agreements that do not exist.

The state court's finding in that regard is clearly in error, and the TRO should be

immediately dissolved on those grounds alone.

>        **2.**        **The Post-Employment Restrictions that Plaintiffs Rely On are Unenforceable.**

The disfavor shown to post-employment restrictive covenants under Oklahoma law

is well-established and set forth by statute:

> A.        A person who makes an agreement with an employer, whether in writing or verbally, not to compete with the employer after the employment relationship has been terminated, shall be permitted to engage in the same business as that conducted by the former employer or in a similar business as that conducted by the former employer as long as the former employee does not directly solicit the sale of goods, services or a combination of goods and services from the established customers of the former employer.

> B.        Any provision in a contract between an employer and an employee in conflict with the provisions of this section shall be void and unenforceable.

15 O.S. § 219A (emphasis added).

Oklahoma law is clear on the issue: post-employment restrictions like non-competes

and non-solicits are void except for a narrow exception: *direct* solicitation of a former

employer's *established customers*.  *Id.*  That narrow exception is construed strictly by

courts applying Oklahoma law, which repeatedly find void and unenforceable restrictive

covenants that purport to prohibit a former employee's "indirect" solicitation of customers,

or agreements that prohibit solicitation of every customer of an employer no matter if the

customer is an active or recent one.

Here, Plaintiffs' agreements do exactly that: the agreements between RX Medical

and Defendants Melton, Poos, and Cline state that those individuals cannot "**directly or**

**indirectly**… undertake or assist in the solicitation of any client or account of the Firm existing during the course of my employment with RxMedical." (Petition, Ex. A) (emphasis added). Defendant Perry's agreement goes even further: it contains the same unenforceable restriction on both "direct and indirect" solicitation not just of RX Medical's customers, but of customers of a third-party as well—ZimVie—regardless of whether Mr. Perry had any contact with those customers.[8] These provisions, on which Plaintiffs' claims are almost exclusively based, are plainly unenforceable.

The Oklahoma Court of Appeals' decision in *Autry v. Acosta*, 2018 OK CIV APP 8, 410 P.3d 1017, is directly on point and shows why Plaintiffs' claims here cannot succeed. In that case, the relevant non-solicit agreement provided that for a twelve-month period post-termination, the employee defendant could not "directly or indirectly engage in the business of selling, soliciting, or promoting the sale of the clients that [the] employee represented while employed" by the former employer. *Id.* ¶ 3, 1018. The Court of Appeals concluded that such non-solicitation language violated section 219A and was unenforceable "because it prohibit[ed] more than the *direct* solicitation of established clients." *Id.* ¶ 31, 1023 (emphasis added).

Likewise, in *TruGreen v. Oklahoma Landscape*, 526 F. Supp. 3d 1080 (N.D. Okla. 2021), the agreement at issue prohibited the former employee from "directly or *indirectly*,

---

[8] As mentioned above, Defendant Perry's agreement also includes a pure non-compete, whereby Mr. Perry is prohibited from working for a competitor anywhere in his assigned territory regardless of contact with customers. The TRO entered by the state court does not enter relief on that basis so Defendants will not address it here other than to point out that such provisions are plainly unenforceable under Oklahoma law.

on behalf of himself or others, solicit[ing]" any client with whom the employee "had actual contact" while employed by the former employer. *Id.* at 1089. The Northern District of Oklahoma determined that this provision "conflicts with 15 O.S. § 219A, which states that a former employee shall be permitted to engage in the same business as that conducted by the former employer as long as he does not *directly* solicit the sale of goods and/or services from the established customers of the former employer." *Id.* at 1089-90 (emphasis in original) (finding provision that restricted both direct and indirect solicitation unenforceable and dismissing complaint).

To be clear, Plaintiffs know that their agreements are unenforceable as written. In their emergency motion, Plaintiffs urged the state court to rewrite the agreements by deleting the word "indirectly" from Melton, Poos, Cline's, and Perry's agreements, and by also deleting the phrase "engage in discussions or other communications with (regardless of who initiates such discussions or communications)" from Perry's agreement. (Motion, p. 14.) While the state court did so in the TRO, that is *precisely* the kind of rewriting of agreements that Oklahoma courts have repeatedly found should not be used to save an employer from a facially overbroad restriction.

The Oklahoma Court of Appeals' decision in *Autry* is again directly on point here. 2018 OK CIV APP 8, 410 P.3d 1017. In that case, the trial court did exactly what the state court did here: struck the term "indirectly" from non-solicitation agreements in order to make them enforceable. *Id.* ¶ 27. The appellate court, in reversing that ruling, found that the trial court erred in doing so because the agreement in question also prohibited the defendant from soliciting past customers and clients of the plaintiff employer, regardless

of whether the defendant worked with those clients or if they were still active customers. *Id.* ¶ 32 (finding agreement unenforceable because "it would extend to previous business customers [defendant] Autry had represented even though [plaintiff] Acosta had no current relationship with them when Autry left and were past clients with whom Acosta did not have an ongoing relationship and those it could not reasonably anticipate continuing a business relationship in the future.")

That is ***exactly*** the same defect in the agreements here: the agreements between Plaintiff and Defendants Melton, Poos, and Cline prohibit those individuals from soliciting "any client or account of the Firm **existing during the course of my employment** with RXMedical." (Petition, Ex. A) (emphasis added).  Defendants Poos and Melton joined RX Medical in 2006, and Defendant Cline joined RX Medical in 2004.  (*Id.*) Put differently, the agreements in question would prohibit those individuals from soliciting a customer who happened to work with RX Medical 16 years ago but who never did business with RX Medical since.  That is exactly the same overbreadth issue that made the agreements unenforceable in *Autry*, and which the Court found could *not* be cured by blue penciling. *Id.* ¶ 33 (finding that the request blue penciling was inappropriate because it would equate to supplying a material term of the contract); *Pre-Paid Legal Servs., Inc. v. Worre*, No. 05-0875, 2006 WL 3227903, at *5 (W.D. Okla. Nov. 3, 2006) (blue penciling inappropriate where it would require "material judicial alteration of essential terms" of the agreement at issue). While Perry's agreement with Medical RX does limit the non-solicitation of customers to those who were customers in the prior 24 months, as mentioned above, that agreement restricts Perry not just from soliciting his employer's customers, but any

customer of ZimVie (a national manufacturer with operations across the entire United States) regardless of whether Perry had any contact with those customers (and includes the same unenforceable restriction on "indirect" solicitation). All four agreements are unenforceable without substantive revision of materials terms, which Oklahoma courts have repeatedly found to be improper. *See Howard v. Nitro-Lift Techs.*, L.L.C., 2011 OK 98, ¶ 3, 273 P.3d 20, 23 ("judicial modification of the contractual provisions is inappropriate where, as here, the contractual provisions would have to be substantially rewritten to cure multiple defects"), *cert. granted, judgment vacated*, 568 U.S. 17, 133 (2012) (vacating judgment solely on grounds of arbitrability of dispute).

In urging the state court to enter relief against Defendant Perry, Plaintiffs claimed that they were not seeking to enforce the portion of his agreement that prohibits him from "engag[ing] in discussions or other communications with (regardless of who initiates such discussions or communications)" customers, apparently recognizing that such provisions are unenforceable under Oklahoma law. *See Bayly, Martin & Fay, Inc. v. Pickard*, 1989 OK 122 ¶ 18, 780 P.2d 1168, 1175 ("Where no active solicitation has occurred, restraint on an insurance agent's dealings with former clients is unenforceable"). Yet, as soon as the TRO was entered, Plaintiffs turned around and insisted on exactly that kind of restriction. In a letter to undersigned counsel on August 23, 2022, Plaintiffs claimed that the Individual Defendants were in violation of the TRO simply by attending scheduled surgeries, regardless of whether any solicitation occurred.  (*See* August 23, 2022 Correspondence attached hereto as **Exhibit 4**.)  Put differently, Plaintiffs only obtained *ex parte* relief after assuring the state court that they were *not* seeking to prohibit all dealings

with customers, then immediately claimed that all dealings were prohibited by the TRO and that any continued contact between the Individual Defendants and customers was a violation of that TRO.[9]

### 3.      Plaintiffs' Extra-Contractual Claims are Also Unlikely to Succeed.

Beyond the flaws in their contractual claims, Plaintiffs' other claims regarding alleged misuse of their confidential information, equipment, and computer systems are also unlikely to succeed.   Neither Plaintiffs' Petition or Motion provide *any* detail on what information the Defendants allegedly took, how that information is allegedly being used, or even what customer relationships are allegedly being affected.  Instead, Plaintiffs simply allege in conclusory fashion that the Individual Defendants *must* have taken confidential information to allow them a seamless transition to working for Stryker.  Not only is that claim incorrect (*see* Ex. 1, ¶ 10), but Plaintiffs cannot rely on pure supposition and conjecture in obtaining an *ex parte* TRO.  *See Dowell v. Pletcher*, 2013 OK 50, ¶ 7, 304 P.3d 457, 460, as corrected (July 15, 2013) ("The right to injunctive relief must be established by clear and convincing evidence and the nature of the injury must not be nominal, theoretical or speculative.").  Indeed, in the section of Plaintiffs' Motion where Plaintiffs argued why they were likely to succeed on the merits of their claims, Plaintiffs simply listed the elements of each a trade secret and Computer Fraud and Abuse Act claim,

---

[9] Just yesterday, August 24, 2022, Plaintiff's counsel also claimed that the Individual Defendants were in violation of the TRO because of their alleged contact with third-party *vendors*.  (*See* August 24, 2022 Letter attached hereto as **Exhibit 5**.) Neither the TRO nor the purported agreements that it rests upon say anything about solicitation of or contract with vendors, yet Plaintiffs are claiming that they are entitled to this overbroad relief as well.

without explaining **why** their claims were likely to meet those standards.  (Motion, p. 15.)
While Plaintiffs admitted that they were still "continuing to collect and review data
regarding the Individual Defendants' acts both during and after their employment with
Plaintiffs ended," Plaintiffs cannot rely on the claim that they **might** find evidence to
support their claims in the future as a basis for a TRO.  The TRO entered by the state court
on those grounds, and particularly the relief entered against the Corporate Defendants,
should be dissolved on those grounds as well: again, Summit is an independent Stryker
distributor for whom none of the Individual Defendants work or make sales, and RD
Medical and DIGSS have no clear involvement in this dispute, yet the TRO grants similar
relief against them anyway.

B.     **The *Ex Parte* Temporary Injunction Should be Dissolved Because It is
       Overbroad and Improper on its Face, and Gives No Explanation why it was
       Granted *Ex Parte*.**

The *ex parte* TRO should also be dissolved because it is overbroad and facially
defective under both Oklahoma state and federal law.  First, as explained above, the TRO
imposes non-solicitation restrictions against half of the Individual Defendants based on
agreements that simply do not exist, and which Plaintiffs never even alleged to exist.
Moreover, the TRO restricts the Individual Defendants from soliciting any person or
company who was an "established customer" of **any** of the Plaintiffs[10], despite the fact that

---

[10] Again, there is no explanation in either the TRO or the Plaintiffs' Petition or Motion why
the non-solicitation provision in the agreements that is limited to customers of RX Medical
was then extended to customers of *all* of the Plaintiffs.  While the agreements with Poos,
Melton, and Cline refer to customer of the "Firm", that term is not defined anywhere in
those agreements nor is there any entity referenced *but* RX Medical.

the agreements only refer to the customers of RX Medical (and, in the case of Perry, a completely unrelated third-party in ZimVie).

Finally, Oklahoma law ***requires*** any TRO granted without notice to be endorsed with the date ***and*** hour of its issuance, and to define precisely the immediate injury, and why the order was granted without notice.[11] 12 O.S. § 1384(C). The TRO does none of the above: it contains a date but not the time that it was issued, and says nothing about what irreparable injury Plaintiffs were facing or why the TRO was granted without notice—especially considering the only notice provided set a hearing on that Motion for August 23rd—only three business days later. (*See* **Exhibits 2 and 3**.)[12] The TRO also contains no time limitations or expiration date whatsoever.  While the Individual Defendants are, on the face of the TRO, not restricted from simply speaking to customers so long as those interactions do not involve direct solicitation, Plaintiffs are actively claiming that the TRO does just that and threatening contempt if the Individual Defendants do not cease ***all*** interaction with surgeon customers (and now, vendors) regardless of whether direct solicitation is involved. (*See* **Exhibits 4 and 5**.)

The strict requirements for the content of an *ex parte* TRO under Oklahoma law are mandatory, and reflect the hesitancy courts should employ when granting relief before allowing the opposing party a chance to be heard. The TRO entered by the state court is,

---

[11] Federal law also clearly requires a TRO granted ex parte to "describe the injury and state why it is irreparable." Fed. R. Civ. P. 65(b)(2).

[12] The TRO also contains a certificate of service, but that page is both unsigned and contains no information on *whom* the TRO was allegedly served on.  (Ex. 3, p. 4.)

on its face, not in compliance with those requirements and should be dissolved on those grounds alone.

**C.     The *Ex Parte* Temporary Restraining Order Should be Dissolved Because it Does not Provide for Any Bond or Security.**

Putting aside the defects in Plaintiffs' claims, the impropriety of an *ex parte* TRO in these circumstances, and the facial defects on the TRO itself, the TRO entered by the state court must be dissolved because it provides for absolutely no bond or security to protect Defendants against its improper issuance.  As explained above, after removal, *federal* law controls this case from the outset.  *EPRO Servs., Inc.*, 2019 WL 4054030, at *2 (D. Kan. Aug. 28, 2019).  Federal law is clear that a bond is required for the issuance of a TRO or injunction.  Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.")

Here, the TRO is causing significant harm to all of the Defendants and should never have been issued in the first place.  While the TRO itself only bars direct solicitation, based on Plaintiffs' threats to hold the Defendants in contempt for even continued attendance at surgeries, the Individual Defendants have stopped attending any scheduled surgeries involving Plaintiff's surgeon customers, and informed those surgeon customers on barely a days' notice that no representative will be available at those surgeries.  (Exhibit A, ¶ 12.) Unsurprisingly, surgeon customers are not pleased to hear the day before a scheduled spinal surgery that a trusted representative whom they expected to be in the operating room with

them to answer questions will no longer be present.  (*Id.*)  Put simply, the improper issuance of the TRO and its overbreadth is placing Defendants' relationship with those customers at significant risk, places the Individual Defendants and their livelihoods at risk, and risks the loss of millions of dollars in business: any TRO should have been backed by a bond in an amount no less than $3 million.  (*Id.*, ¶ 12.)

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

WHEREFORE, Defendants respectfully request that this Court immediately dissolve the *Ex Parte* Temporary Restraining Order entered against them by the District Court of Oklahoma County, Oklahoma on August 19, 2022, and grant them any other such relief that this Court deems appropriate.  Alternatively, Defendants respectfully request that the Court require Plaintiffs to immediately post a bond in an amount no less than $3 million, and order that the TRO shall have no effect until such bond is posted.

Respectfully submitted,

/s/ Kiran A. Phansalkar

Kiran A. Phansalkar, OBA #11470
J. Dillon Curran, OBA #19442
Preston M. Sullivan, OBA #33489
Conner & Winters, LLP
1700 One Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
Email:   kphansalkar@cwlaw.com
         dcurran@cwlaw.com
         psullivan@cwlaw.com

and

Michael D. Wexler, IL #6207847
  *(pending admission pro hac vice)*
Kevin J. Mahoney, IL #6299398
  *(pending admission pro hac vice)*
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL  60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000
Email:   kmahoney@seyfarth.com
         mwexler@seyfarth.com

***Attorneys for Defendants Roben Melton,
Justin Poos, Brady Cline, Todd Perry, Shelby
Bullard, Greg Mason, Joshua McDonald,
Kristy Moore, DIGSS Investments, LLC,
Stryker Corporation, Summit Spine Solutions,
LLC, and RD Medical, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of August 2022, I electronically transmitted the

foregoing document to the Clerk of Court using the ECF System for filing.  Based on the

records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF

registrants of record, namely:

> Jason A. Ryan, OBA #18824
> Patrick R. Pearce, Jr., OBA #18802
> Corey A. Neller, OBA #19534
> Ryan Whaley
> 400 N. Walnut Ave.
> Oklahoma City, OK  73104
> Telephone:  (405) 239-6040
> Facsimile:  (405) 239-6766
> Email: jryan@ryanwhaley.com
>         ppearce@ryanwhaley.com
>         cneller@ryanwhaley.com
> ***Attorney for Plaintiffs***
> ***RX Medical, LLC, ROK Sales, LLC,***
> ***and ROK Medical Management, LLC***

>                              */s/ Kiran A. Phansalkar*
>                              Kiran A. Phansalkar