IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RX MEDICAL, LLC, ROK SALES, LLC, and ROK MEDICAL MANAGEMENT, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) ) ) |
| ROB MELTON, JUSTIN POOS, BRADY CLINE, TODD PERRY, SHELBY BULLARD, GREG MASON, JOSH MCDONALD, KRISTY MOORE, DIGSS INVESTMENTS, LLC, STRYKER CORPORATION, SUMMIT SPINE SOLUTIONS, LLC, and RD MEDICAL, LLC, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

5:22-cv-00731-PRW

Hon. Patrick R. Wyrick

## DECLARATION OF JUSTIN POOS

I, Justin Poos, under penalties as provided by law, state as follows:

1. I am over the age of 18, and based on my personal knowledge, would, if called to testify about the matters set forth herein, be able to do so.

2. I am currently employed as a sales representative by Stryker Employment Company, LLC (referred to herein as "Stryker"). I am familiar with the allegations of Plaintiffs RX Medical, LLC's, ROK Sales, LLC's, and ROK Medical Management, LCL's Petition and Emergency Motion for Injunctive Relief filed in this lawsuit.

3. I am a sales manager for surgical spine products, currently employed by Stryker. Spine products refers generally to the products used by orthopedic surgeons and neurosurgeons in surgeries involving the spine. Defendants Rob Melton and Brady Cline

Exhibit 1
Page 1 of 5

are also sales managers for spine products, and Defendants Todd Perry, Shelby Bullard, Greg Mason, and Josh McDonald are all sales associates for spine products, employed by Stryker. Defendant Kristy Moore is not in a sales associate role: she handles administrative functions and I understand is currently employed by Defendant Summit Spine Solutions, LL ("Summit Spine"). I will refer to all of these individuals and myself as the "Individual Defendants" for ease of reference but, to be clear, Ms. Moore was not in a sales role in any way.

4. The role of a surgical sales representative goes far beyond just meeting with customers and selling spine products. Specifically, sales associates and managers, like myself and the individuals listed above, attend procedures with our surgeon customers, and assist those surgeons with any questions or issues that may arise regarding the equipment being used. In that role, both myself and the other individuals listed above (again, excepting Ms. Moore) are a critical part of ensuring the best results for patients undergoing major surgeries of the spine.

5. From 2006 until August 12, 2022, I was employed by Plaintiff RX Medical, LLC ("RX Medical"), first as a sales associate and then as a sales manager for spine products in and around Oklahoma City, Oklahoma.

6. In that role, I managed Rob Melton and Brady Cline, who in turn each managed Todd Perry, Shelby Bullard, Greg Mason, and Josh McDonald. All of us were employed by RX Medical until August 12, 2022. Kristy Moore also worked at RX Medical but did so in an a purely administrative role by handling things like payroll, ordering, and scheduling around the RX Medical office.

7.     RX Medical is, and was while I worked there, a distributor of surgical spine products for the equipment manufacturer ZimVie, Inc. ("ZimVie", formerly Zimmer). In addition to products manufactured by ZimVie, RX Medical also offered certain products from other medical device manufacturers for those instances where ZimVie did not offer a particular product that a surgeon may want to use in a spine surgery.

8.     The Individual Defendants, including myself, had issues with RX Medical's management for some time before deciding to join Stryker. On August 12, 2022, we all submitted our notices of resignation to RX Medical, effective that day, and joined Stryker the next business day.

9.     I understand that Summit Spine, RD Medical, LLC, and DIGSS were named as Defendants in this matter as well. To be clear, neither I nor any of the other Individual Defendants except Ms. Moore are employed by Summit Spine, which I understand is an independent distributor of Stryker spine products, in any event. Similarly, none of us have any relationship with RD Medical. DIGSS is a company that I own with Rob Melton that sells other surgical products not offered by RX Medical or ZimVie.

10.    I understand that Plaintiffs in this matter are accusing myself and the other Individual Defendants of misappropriating or misusing Plaintiffs' confidential information, intentionally destroying confidential information before our resignation, and refusing to return equipment owned by the Plaintiffs. I am unaware of exactly what information Plaintiffs are referencing but I am not using any information belonging to Plaintiffs in my role at Stryker nor did I intentionally destroy any information belonging to Plaintiffs before my resignation. To the best of my knowledge, none of the Individual

Defendants are doing so either. With regard to the allegation that we failed to return physical equipment, I am unaware of any such equipment and believe that Plaintiffs are mistakenly identifying equipment that the Individual Defendants and I purchased on our own.

11. I understand that the state court in which this lawsuit was first filed entered a TRO against myself and the other Defendants that among other things, directs us to stop soliciting any of the Plaintiffs' "established customers." I am uncertain what customers are included in that category, but I also understand that counsel for Plaintiffs also sent correspondence demanding that we not only stop soliciting customers but stop attending any surgeries as well with customers whom we may have worked with while employed by RX Medical, while threatening to seek a finding that we are in contempt of court if we do so. Based upon those threats, my understanding is that we cannot even attend surgeries that have already been scheduled, even if attending those surgeries would not involve any solicitation. As a result, both myself and the other Individual Defendants were forced to notify surgeon customers, on barely a days' notice, that we would not be able to attend those procedures.

12. Unsurprisingly, our surgeon customers were not pleased to hear the day before a scheduled spinal surgery that a trusted representative whom they expected to be in the operating room with them to answer questions would no longer be present. Those customers with whom we were forced to be absent from surgeries represent several million dollars in annual business, both in commissions to myself and the other Individual Defendants as well as Stryker. The TRO also puts my employment at Stryker at risk, along

with the employment of the other Individual Defendants as well, and our combined annual compensation at Stryker is in excess of $2 million. The entry of the TRO by the state court and the fact that it remains in place are, simply put, threatening my livelihood, that of the other Individual Defendants, a substantial part of Stryker's business, and the safety of third-party patients.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 25th day of August, 2022.

_____
JUSTIN POOS

5

Exhibit 1
Page 5 of 5