# STRYKER CORPORATION

# CONFIDENTIALITY, INTELLECTUAL PROPERTY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT FOR U.S. EMPLOYEES

In addition to other good and valuable consideration, I am expressly being given employment, continued employment, a relationship with Stryker Corporation (including its subsidiaries, divisions and affiliates, as well as any of their respective successors and assigns referred to collectively as "Stryker"), certain monies, bonuses, compensation increases, benefits, training, promotion, equity grants and/or trade secrets and confidential information of Stryker and its customers, suppliers, vendors or affiliates to which I would not have access but for my relationship with Stryker in exchange for my agreeing to the terms of this Agreement. In consideration of the foregoing, I agree as follows:

## INTRODUCTION AND ACKNOWLEDGEMENTS

**1.1 Acknowledgment.** I acknowledge and agree that the business in which Stryker is engaged is extremely competitive and that during my employment with Stryker I have received and will receive and have access to materials and information regarding Stryker's technologies, know-how, products, services, customers and sales that are proprietary and confidential to Stryker and for which Stryker has spent and will continue to spend substantial time and monies developing and providing training. I recognize that these materials and information are an important and valuable asset to Stryker and that Stryker has a legitimate interest in protecting the confidential and proprietary nature of these materials, information, technologies, products and services. Stryker has provided and will be providing me with Confidential Information during my employment and the opportunity to contribute to the creation of Confidential Information, which will assist both Stryker and me in competing effectively. Stryker also has dedicated its time and resources developing and maintaining relationships with existing and potential customers, clients, referral sources, agents, distributors, employees and vendors. During my employment with Stryker, I understand that Stryker expects me to continue to develop and maintain these relationships on its behalf. I recognize that these relationships are an important and valuable asset to Stryker and that Stryker has a legitimate interest in protecting these relationships.

**1.2 Purpose of Agreement.** For the reasons identified herein, this Confidentiality, Intellectual Property, Non- Competition and Non-Solicitation Agreement for U.S. Employees (the **"Agreement"**) is designed to protect the legitimate interests of all of the various businesses that comprise Stryker Corporation.

**1.3 Terms of Agreement and Modifications.** This Agreement, including the items in Attachment A ("State Law Modifications") shall remain in effect during my employment with Stryker even if my position or job location changes or I transfer from one Stryker company to another. For purposes of this Agreement, the terms of this Agreement will be interpreted according to the applicable state law as set forth on Attachment B ("Governing Law and Jurisdiction").

## DEFINITIONS

**EXHIBIT 5**

As used in this Agreement:

2.1 The **"Company"** or **"Stryker"** means collectively, Stryker Corporation, including its subsidiaries, divisions, and affiliates and their respective successors, assigns, purchasers and acquirers, to which I may be transferred or by which I may be employed in the future, wherever located.

2.2 **"Confidential Information"** means know-how, trade secrets, and technical, business and financial information and any other non-public information in any way learned by me, disclosed to me or developed by me during my employment with Stryker, including, but not limited to (a) prices, renewal dates and other detailed terms of customer or supplier contracts and proposals; (b) information concerning Stryker's customers, clients, referral sources and vendors, and potential customers, clients, referral sources and vendors, including, but not limited to, names of these entities or their employees or representatives, preferences, needs or requirements, purchasing or sales histories, or other customer or client-specific information; (c) supplier and distributor lists; (d) pricing policies, methods of delivering services and products, and marketing and sales plans or strategies; (e) products, product know-how, product technology and product development strategies and plans; (f) employees, personnel or payroll records or information;

(g) forecasts, budgets and other non-public financial information; (h) acquisitions, divestitures, expansion plans,

Stryker Corporation Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement for U.S. Employees: v. 1, effective Jan 2015 management policies and other business strategies; (i) inventions, research, development, manufacturing, purchasing, finance processes, technologies, machines, computer software, computer hardware, automated systems, methods, engineering, marketing, merchandising, and selling; and (j) information belonging to third parties which has been disclosed to Stryker in confidence. Confidential Information shall not include information that is or becomes part of the public domain, such that it is readily available to the public, through no fault of mine.

2.3 **"Conflicting Product or Service"** means any product, process, technology, machine, invention or service of any person or organization other than Stryker in existence or under development which is similar to, resembles, competes with or is intended to resemble or compete with a product, process, technology, machine, invention or service upon which I have worked or about which I was knowledgeable during the last twenty-four (24) months of my employment with Stryker. For clarity, if I worked in a service position (e.g., ProCare) during the last twenty-four (24) months of my employment, Conflicting Product or Service includes any product, process, technology, machine, invention or service of any person or organization other than Stryker in existence or under development which is similar to, resembles, competes with or is intended to resemble or compete with a product, process, technology, machine, invention or service used in any procedure in which I provided service or support on behalf of Stryker.

2.4 **"Conflicting Organization"** means any person or organization which is engaged in or about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a Conflicting Product or Service. For clarity, if I worked in a service position (e.g., ProCare) during the last twenty-four (24) months of my employment, Conflicting Organization includes the customer(s) for whom I provided service during the last twenty-four (24) months of my employment.

2.5 **"Copyrightable Works"** means all works of authorship, fixed in any tangible medium of expression now known or later developed, that I prepare within the scope of my employment with Stryker, including, but not limited to, writings, reports, graphics, computer programs, user interfaces, drawings, designs, documentation and publications.

2.6 **"Employer"** means any entity of Stryker that employs me or any other entity included within the definition of "Stryker" to which I may be transferred or by which I may be employed in the future.

2.7 **"Intellectual Property"** means all inventions, patents, patent applications, designs, discoveries, innovations, ideas, know-how, trade secrets, methods, specifications, procedures, and/or improvements, whether patentable or not, Copyrightable Works, trademarks, mask works, certifications, or invention disclosures.

2.8 **"Restricted Period"** means the twelve-month period following termination of my employment with Stryker, regardless of the reason for termination.

2.9 "**Stryker Customer**" means any of the current or prospective accounts, customers, doctors, hospitals, group purchasing organizations, integrated delivery networks or clients, with whom I have had direct or material contact during the last twenty-four (24) months of my employment with Stryker or about whom I learned Confidential Information during my employment with Stryker, including, but not limited to: (a) any customer that purchased Stryker products or services, (b) any prospect that received or requested a proposal to purchase Stryker products or services, (c) any affiliate of any such customer or prospect, or (d) any of the individual customer or prospect contacts that I established, serviced, sold to, attended training or seminars with or learned confidential information about. For clarity, I agree that Stryker Customers also includes all customers of the branch or division to which I am assigned and with which I have had direct or material contact, serviced, trained, learned Confidential Information about or participated in customer development activities.

# PERFORMANCE FOR STRYKER

**3.1 Loyalty and Best Efforts.** During my employment with Stryker, I will devote my best efforts, attention and energies to the performance of my duties as an employee of Stryker.

**3.2 Conflicts of Interest**. I agree to abide by the provisions of Stryker Corporation's Code of Conduct, including, but not limited to, the provisions regarding Conflicts of Interest. As such, during the term of my employment with

Stryker, I will not engage in any activity or have any outside interest that might deprive Stryker of my loyalty, interfere with the satisfactory performance of my duties, or be harmful or detrimental to Stryker or be engaged in any other occupation, professional or business activity that conflicts with my obligations to Stryker or provide any services that competes with Stryker. I understand that I am required to immediately notify the executive in charge of my division or the CEO of any potential conflict of interest involving me.

**3.3. Sale of Stryker Property.** I will not sell, give away or trade for my own benefit or for or on behalf of any person or entity other than Stryker, any items that are the property of Stryker. Stryker property includes, but is not limited to, samples, inventory, customer trade-ins (which includes trade-ins of Stryker and non-Stryker Products), training materials, promotional materials, handbooks, correspondence files, business card files, customer and prospect lists, price lists, product lists, software manuals, technical data, forecasts, budgets, notes, customer information, employee information, employee names, phone lists, organizational charts, product information and/or Confidential Information acquired by me in the course of my employment by Stryker. The requirements of this Section 3.3 apply to Stryker Property even if the property is obsolete or has been fully amortized, depreciated or expensed by Stryker.

# INVENTIONS

**4.1 Disclosure of Developments.** I agree that during and subsequent to my employment with Stryker, I will promptly disclose and furnish complete information to Stryker relating to all inventions, improvements, modifications, discoveries, methods, and developments, whether patentable or not, made or conceived by my or under my direction during my employment whether or not made or conceived during normal working hours or on the premises of Stryker.

**4.2 Intellectual Property is Stryker Property.**

a. I agree to assign and hereby assign to Stryker all title, interests and rights including intellectual property rights worldwide in and to any and all Intellectual Property (including, as defined above, patents and patent applications) made, conceived, developed, reduced to practice, or authored by me alone or with others during the course of my employment which are within the scope of Stryker's actual or anticipated business.

b. My agreement to assign Intellectual Property rights, as set forth above, shall not apply to any Intellectual Property that was conceived and developed without the use of Stryker's equipment, supplies, facilities, and trade secret information and which was developed entirely on my own time, unless (a) the Intellectual Property relates (i) directly to the business of Stryker, or (ii) to Stryker's actual or anticipated research or development, or (b) the Intellectual Property results from any work performed by me for Stryker.

c. I agree, however, that Stryker shall have a nonexclusive, fully paid license to use for all purposes any Intellectual Property within the scope of Stryker's actual or anticipated business but not assigned to Stryker under Paragraph 4.2(b), unless such a license is prohibited by statute or by a court of last resort and competent jurisdiction.

**4.3 Copyrightable Works.** I recognize that all Copyrightable Works shall to the fullest extent permissible be considered "works made for hire" in the United States as defined in the U.S. Copyright Laws and in any other country adhering to the "works made for hire" or similar notion. All such Copyrightable Works shall from the time of creation be owned solely and exclusively by Stryker throughout the world. If any Copyrightable Work or portion thereof shall not be legally qualified as a work made for hire in the United States or elsewhere, or shall subsequently be held to not be a work made for hire, I agree to assign and do hereby assign to Stryker all of my right, title and interest to the Copyrightable Works and all registered and applied for copyrights therein. I hereby waive any moral rights which I may hold in any Copyrightable Works or other Intellectual Property, as an author worldwide.

**4.4 Employee Cooperation.** When requested to do so by Stryker, either during or subsequent to my employment with Stryker, I will (a) execute all documents requested by Stryker for the vesting in Stryker of the entire right, title and interest in and to the Intellectual Property and Confidential Information, and all patent, copyright, trademark, or other applications filed and issuing on the Intellectual Property; (b) execute all documents requested by Stryker for filing and obtaining of patents, trademarks, or copyrights; and (c) provide assistance that Stryker reasonably requires to protect its right, title and interest in the Intellectual Property and Confidential Information, including, but not limited to, providing declarations and testifying in administrative and legal proceedings with regarding to Intellectual Property and Confidential Information. Whenever requested to do so by Stryker, I shall execute any applications, assignments or other instruments which Stryker shall consider necessary to apply for and obtain Letters Patent, trademark and/or copyright registrations in the United States or any foreign country, or to otherwise protect Stryker's interests. These obligations shall continue beyond the termination of my employment with Stryker with respect to Intellectual Property conceived, authored or made by me during my period of employment, and shall be binding upon my executors, administrators or other legal representatives.

**4.5 Prior Intellectual Property.** I have attached to this Agreement as Attachment C ("List of Prior Intellectual Property") a complete list of what I represent to be all Intellectual Property made, conceived or first reduced to practice by me, alone or jointly with others, prior to my employment with Stryker ("Prior Intellectual Property"). If no such Prior Intellectual Property List is attached to this Agreement, I represent that I have no such Prior Intellectual Property at the time of this Agreement. If in the course of my employment with Stryker I incorporate into a Stryker product, process, or machine any Prior Intellectual Property, then I hereby grant, and agree to grant, Stryker a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, modify, use, and sell such Prior Intellectual Property as part of or in connection with such product, process, or machine.

## CONFIDENTIAL INFORMATION AND PROPERTY

**5.1 Non-disclosure of Confidential Information.** I recognize that Confidential Information is of great value to Stryker, that Stryker has legitimate business interests in protecting its Confidential Information, and that the disclosure to anyone not authorized to receive such information, including any entity that competes with Stryker, will cause immediate irreparable injury to Stryker. Unless I first secure Stryker's written consent, I will not disclose, use, disseminate, identify by topic or subject, lecture upon or publish Confidential Information. I understand and agree that my obligations not to disclose, use, disseminate, identify by subject or topic, lecture upon or publish Confidential Information shall continue after the termination of my employment for any reason.

**5.2 Return of Information and Materials.** Upon termination of my employment with Stryker for any reason whatsoever, or at any time requested by Stryker, I will immediately return to Stryker any and all Confidential Information and any and all information and material relating to Stryker's business, products, personnel, suppliers or customers, whether or not such material is deemed to be confidential or proprietary. Thereafter, any continued possession will be deemed to be unauthorized. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of Stryker and which were entrusted to me or obtained by me at any time during my employment with Stryker.

**5.3 Return of Stryker Property.** Upon termination of my employment with Stryker for any reason whatsoever, or at any time requested by Stryker, I will return to Stryker any and all property in my possession which belongs to Stryker, including the following: all keys and security and credit cards; all equipment, products, samples, inventory, tools, computers, software, cell phones and other electronic devices; all customer files, account files, price lists, product information, training manuals, promotional materials and handbooks; and all other documents relating to Stryker's business, products, personnel, suppliers and customers.

## NON-SOLICITATION AND NON-COMPETE

**6.1 Employee Acknowledgement.** I recognize that Stryker's relations with Stryker Customers represent an important business asset that results from Stryker's significant investment of its time and resources. I further acknowledge that my position with Stryker exposes me to Confidential Information and more generally to a segment of business with respect to which I may have had no prior exposure before joining Stryker. I further recognize that by virtue of my employment by Stryker, I have gained relationships with Stryker's Customers, and because of such relationships, I will cause Stryker great loss, damage, and immediate irreparable harm, if I should for myself or on behalf of any other person, entity, firm or corporation, sell, offer for sale, or solicit or assist in the sale of a Conflicting Product or Service as stated in this Agreement.

**6.2 Non-Solicitation of Customers and Supplier.** I agree that during my employment with Stryker and during the Restricted Period, I will not, in any capacity, directly or indirectly, personally or through another person, (i) solicit, contact or sell any Conflicting Product or Service to a Stryker Customer; (ii) ) solicit, contact or sell any product or service to a Stryker Customer that competes with or is similar to any Stryker product or service; (iii) divert, entice or otherwise take away from Stryker the business or patronage of any Stryker Customer; or (iv) solicit or induce any vendor, supplier or Stryker Customer to terminate or reduce its relationship with Stryker.

**6.3 Non-Compete.**

(a) During my employment with Stryker and during the Restricted Period, I will not work (as an employee, consultant, contractor, agent, or otherwise) for, or render services directly or indirectly to, any Conflicting Organization in which the services I may provide could enhance the use or marketability of a Conflicting Product or Service by application of Confidential Information which I have had access to during my employment. This provision shall not bar me from accepting employment with a Conflicting Organization whose business is diversified and which is, as to that part of its business in which I accept employment, not a Conflicting Organization. If I accept employment with a Conflicting Organization, I will provide Stryker written assurances satisfactory to Stryker that indicate that I will not render services directly or indirectly, during the Restricted Period, in connection with any Conflicting Product or Service. I understand that Stryker may also require written assurances from the Conflicting Organization. I also agree that during my employment with Stryker and during the Restricted Period, I will not render services to any organization or person in a position similar in responsibilities to any position I held with Stryker during the twenty-four (24) months prior to the termination of my employment with Stryker for any reason or in which I could use Confidential Information to the detriment of Stryker.

(b) If I hold a research and development position with Stryker, I agree that during my employment with Stryker and during the Restricted Period I shall not hold a position with a competitor in which I will research or develop any product or service similar to products or services of Stryker for which for which I had research or development responsibilities during the twenty-four (24)-month period prior to the termination of my employment with Stryker or about which I learned Confidential Information.

(c) Notwithstanding Section 6.3(a) hereof, if at the time of the termination of my employment, my responsibilities include: sales or service, case coverage, servicing products or assisting with sales or service, case coverage or servicing product within a geographic area, territory, branch or assigned customer accounts, then the post-employment restrictions set forth in Section 6.3(a) hereof shall include and be limited to (i) the geographic area, territory, branch and assigned customer accounts that, directly or indirectly, was covered either by me or by employees, distributors, agents or representatives who reported to me at any time during such twenty-four (24) month period preceding the termination of my employment; and/or (ii) any geographic area, territory, branch and assigned customer accounts to which I provided services, covered cases, made proposals, made sales or serviced products whether directly or indirectly, at any time during such twenty-four

(24) month period preceding the termination of my employment.

(d) During the Restricted Period, Section 6.3 shall apply if, during the last twenty-four months of employment, I worked in a sales or service role (e.g., ProCare, field service) or in a role that Stryker classified as salaried or exempt.

**6.4 Non-Solicitation of Employees.** I agree that during my employment with Stryker and during the Restricted Period, I will not, directly or indirectly, solicit, induce or influence, or attempt to solicit, induce or influence, any person engaged as an employee, independent contractor or agent of Stryker to terminate his, her or its employment and/or business relationship with Stryker or do any act which may result in the impairment of the relationship between Stryker and its employees, independent contractors or agents.

**6.5 Employee Obligation to Notify Stryker of Work for New Employer.** To enable Stryker to monitor my compliance with the obligations imposed by this Agreement, I agree to notify Stryker in writing before I commence employment with a new employer of the identity of my new employer (if any) and of my job title and responsibilities, and will continue to so inform Stryker, in writing, any time I accept or change employment during the Restricted Period. I shall provide this notice to the Human Resource lead for the division or location I last worked for Stryker. I agree Stryker is also permitted to contact any new or prospective employer regarding my obligations owed to Stryker.

**6.6 Modification of Non-Compete and Non-Solicitation Provisions.** The provisions of this Agreement shall be severable and if any provision of this Agreement is found by any court to be unenforceable, in whole or in part, the remainder of this Agreement shall nevertheless be enforceable and binding on the parties. I also agree that a court or arbitrator may modify any invalid, overbroad or unenforceable term of this Agreement so that such term, as modified, is valid and enforceable under applicable law and is authorized to extend the length of this Agreement for any period of time in which I am in breach of this Agreement or as necessary to protect the legitimate business interests of Company.

## REPRESENTATIONS; ACKNOWLEDGEMENTS

**7.1 Code of Conduct.** I acknowledge receipt of Stryker Corporation's Code of Conduct and confirm that I have read and understand the Code of Conduct. I further agree to abide by and support the policies set forth in the Code of Conduct and understand that compliance with the Code of Conduct, as it may be amended by Stryker from time to time, is a condition of my continued employment.

**7.2 No Violation of Agreements with Prior Employers.** I have not signed any non-competition or other agreement that I have not disclosed to Stryker that prohibits me from being employed by Stryker or assigning works and ideas to Stryker ("**Non-Compete Agreement**"). I agree that I will not disclose to Stryker or use for Stryker's benefit any information that to my knowledge is proprietary or confidential to any of my prior employers, without proper consent from the prior employer. If I have signed a Non-Compete Agreement with a prior employer, I have provided a copy of that agreement to Stryker's Human Resources Department under separate cover.

**7.3 Medicare, Medicaid Participation; Fraud and Abuse.** I (a) have not been excluded or debarred from participation in any Federal or State Health Care Program (including Medicare, Medicaid, or CHAMPUS) or other state or federal governmental program, and (b) have not committed any acts which are cause for exclusion or debarment from participation in any such program. In addition, no entity in which I serve as a managing employee or officer, or currently have a direct or indirect ownership or control interest (c) has been excluded or debarred from participation in any Federal or State Health Care Program (including Medicare, Medicaid, or CHAMPUS), or (d) has committed any acts which are cause for exclusion or debarment from participation in any such program.

**7.4 At-Will Employment.** I understand that this Agreement does not obligate me to remain employed by Stryker nor does it confer upon me the right to continued employment by Stryker. Stryker and I each have the right to terminate the employment relationship at any time, for any or no reason, with or without notice and with or without cause.

**7.5 Provisions are Reasonable.** I acknowledge and agree that it is reasonable and necessary for the protection of the goodwill and continued business of Stryker that I abide by the covenants and agreements contained in this Agreement during and following my employment with Stryker and that Stryker will suffer irreparable injury, loss, harm and damage if I engage in conduct prohibited in this Agreement. My experience and abilities are such that compliance with this Agreement will not cause any undue hardship or unreasonable restriction on my ability to earn a livelihood and that the restrictions on my activities during and after employment do not prevent me from using skills in any business or activity that is not in competition with Stryker.

**7.6 Duty of Loyalty.** Nothing herein shall limit or reduce my common law duties to Stryker, including but not limited to my duty of loyalty.

## MISCELLANEOUS

**8.1 Remedies.** I recognize that any breach by me of Sections 4, 5 or 6 of this Agreement will cause Stryker irreparable harm that cannot be compensated adequately by an award of monetary damages. Consequently, I agree: (a) that Stryker is entitled to specific performance and injunctive relief in addition to money damages at law without the posting of a bond if I breach or threaten to breach this Agreement; (b) that a court or arbitrator shall extend the Restriction Periods in this Agreement for any period of time in which I am in breach or as required to protect Stryker's legitimate business interests; and (c) that Stryker will be entitled to recover from me its reasonable attorneys' fees and costs for any action that it successfully brings for my breach or threatened breach of this Agreement. All remedies for enforcement of this Agreement shall be cumulative and not exclusive.

**8.2 Governing Law and Venue.** Although I may work for Stryker in various locations, I agree and consent that this Agreement shall be interpreted and enforced as a contract of the applicable state listed on Attachment B as of my date of termination and shall be interpreted and enforced in accordance with the internal laws of that state without regard to its conflict of law rules. In such circumstance, I agree and consent that any and all litigation between Stryker and me relating to this Agreement will take place exclusively in the state listed on Attachment B, and I consent to the jurisdiction of the federal and/or state courts in the state listed on Attachment B. I consent to personal jurisdiction and venue in both such Courts and to service of process by United States Mail or express courier service in any such action.

**8.3 Validity of Provisions.** I expressly agree that the provisions contained herein are fair and reasonable limitations as to time, geographical area and scope of activity, and such restrictions do not impose a greater restraint than is necessary to protect the goodwill and other business interests of Stryker. To the extent any portion of this Agreement, or any portion of any provision of this Agreement is held to be invalid or unenforceable, it shall be construed by limiting and reducing it so as to contain the maximum restrictions permitted by applicable law. All remaining provisions of this Agreement, and/or portions thereof, shall remain in full force and effect. I have been provided an adequate amount of time to seek legal counsel before executing this Agreement.

**8.4 Waiver.** I acknowledge that the failure of Stryker to insist upon strict compliance of this Agreement shall not be deemed a waiver of any of its rights.

**8.5 Transfer or Renewal of Employment.** This Agreement will be deemed to continue during any periods of renewal of my employment, including, but not limited to, periods of employment following promotions or transfers, or during any subsequent re-employment by Stryker.

**8.6 Binding Effect and Assignability.** I may not assign any of my obligations under this Agreement. I acknowledge that my obligations will continue beyond the termination of my employment and are binding upon my assigns, executors, administrators, and other legal representatives. I hereby consent and agree to assignment by Stryker of this Agreement and all rights and obligations hereunder, including, but not limited to, an assignment in connection with any merger, sale, transfer or acquisition consummated by Stryker or any of its subsidiaries, affiliates or divisions, or relating to all or part of its assets or the assets of its subsidiaries, affiliates or divisions.

**8.7 Independence of Obligations.** Each of my obligations to be performed under this Agreement shall be interpreted independent of (i) any other provisions of this Agreement, and (ii) any other obligation Stryker may have toward me. The existence of any claims I have or may have against Stryker, whether based on this Agreement or otherwise, shall not be a defense to the enforcement of any my obligations under this Agreement.

**8.8 Trial by Court.** I agree that in any legal action relating to this Agreement and/or my obligations under this Agreement, I waive my right to a trial by jury.

**8.9 Notice.** Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be mailed by pre-paid certified mail, return receipt requested, or by Federal Express or other similar overnight delivery service providing proof of delivery, to Stryker at your division's headquarters to the attention of your division's HR leader, and to me at my last known address. All notices shall be effective on the date sent in accordance with this provision.

**8.10 Interpretation.** I acknowledge that the terms of this Agreement will not be interpreted or construed in favor of me on the basis that Stryker was the drafter of this Agreement. This Agreement shall be construed as a whole and in accordance with its fair meaning.

**8.11 Entire Agreement.** This document, including its three attachments [Attachment A "State Law Modifications," Attachment B "Governing Law and Jurisdiction," and Attachment C "List of Prior Intellectual Property"] contains the entire agreement of the parties related to the matters addressed in this Agreement. This Agreement may not be modified orally but only by a written agreement, signed by me and the Vice President of Human Resources for Stryker Corporation. This Agreement supersedes any and all prior agreements between the parties with respect to the matters addressed in this Agreement.

**8.12 Prior Agreements.** Except as may be stated herein, I agree and acknowledge that this Agreement supersedes prior agreements between me and Stryker with respect to the subject matter addressed in this Agreement.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THE AGREEMENT AND ITS ATTACHMENTS AND UNDERSTAND AND AGREE TO EACH OF THEIR PROVISIONS.

{{Sig___:signer1:signature}}

_____
EMPLOYEE'S SIGNATURE

Roben Melton

_____

PRINT NAME Robert Melton

DATE: {{Dte_es_:signer1:date}}

# ATTACHMENT A

## State Law Modifications

The purpose of this Attachment A to the Agreement is to modify certain terms of this Agreement as described herein. For purposes of this Agreement, the Employee is employed in only one state at any given time.

**WHILE THE EMPLOYEE IS EMPLOYED IN LOUISIANA**

The following is added to Sections 6.2 and 6.3 of the Agreement and replaces Attachment B:

During the Restricted Period, this covenant shall apply in the following parishes:

# ATTACHMENT B

**List of Prior Intellectual Property**