IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RX MEDICAL, LLC, ROK SALES, LLC, and ROK MEDICAL MANAGEMENT, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ROBEN MELTON, JUSTIN POOS, BRADY CLINE, TODD PERRY, SHELBY BULLARD, GREG MASON, JOSH MCDONALD, KRISTY MOORE, DIGSS INVESTMENTS, LLC, STRYKER CORPORATION, SUMMIT SPINE SOLUTIONS, LLC, and RD MEDICAL, LLC,<br><br>　　　　　　　Defendants. | Case No.: 5:22-cv-00731-PRW |

**DEFENDANTS' MOTION FOR LEAVE
TO CONDUCT LIMITED, EXPEDITED DISCOVERY**

Defendants Rob Melton, Justin Poos, Brady Cline, Todd Perry, Shelby Bullard, Greg Mason, Josh McDonald, Kristy Moore, DIGSS Investments, LLC, Stryker Corporation ("Stryker"), Summit Spine Solutions, LLC, and RD Medical, LLC ("Defendants"), by their attorneys and pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, respectfully move this Court to allow Defendants to conduct limited, expedited discovery in the event that the Court sets a hearing on Plaintiff's Motion for a Preliminary Injunction.

**INTRODUCTION**

Plaintiffs RX Medical LLC, ROK Sales, LLC, and ROK Medical Management, LLC ("Plaintiffs") filed a Petition and Emergency Motion for Temporary Injunction in the District Court for Oklahoma County ("the state court") on August 19, 2022. Despite the fact that Plaintiffs specifically sent notice that their Motion would be heard on Wednesday

of the next week, on the same day that the Petition was filed the state court entered an *ex parte* temporary restraining order ("the TRO") without notice to any of the Defendants or an opportunity for them to be heard.  The TRO does not give any reasons why notice was not required, nor does it identify the immediate, irreparable harm that necessitated *ex parte* relief.  The TRO grants injunctive relief on the basis of purported non-solicit agreements that four of the Defendants entered into with RX Medical, but also grants the same relief against those Individual Defendants who never had such restrictions.

Defendants removed this matter to this Court on August 24 2022.  (Dkt. 1.) On the basis of the defects in the TRO mentioned above, along with others, Defendants filed an Emergency Motion to Dissolve the TRO (Dkt. 6), which is set for hearing before this Court tomorrow, August 31, 2022.  (Dkt. 10.) On August 29, 2022, Plaintiffs filed a Motion for Preliminary Injunction asking this Court to set their Emergency Motion for an evidentiary, preliminary injunction hearing.  (Dkt. 15.) For all the reasons set forth in Defendants' Motion to Dissolve, Plaintiffs' request for a preliminary injunction hearing should be denied: (1) the purported agreements that Plaintiffs rely upon are overbroad on their face under black letter Oklahoma law, (2) half of the enjoined individuals do not have agreements in the first place, and (3) Plaintiffs' amorphous allegations about alleged misuse of their computer systems and information do not support a request for injunctive relief.  However, to the extent the Court is inclined to conduct a hearing on Plaintiffs' Motion for a Preliminary Injunction, Defendants' request leave to conduct limited, expedited discovery in advance of that hearing.

## FACTUAL BACKGROUND

The circumstances regarding this dispute are more fully set forth in Defendants' Motion to Dissolve the TRO, and incorporated herein. Briefly, the Individual Defendants[1] are all sales representatives or sales managers for surgical spine products, which are used by orthopaedic surgeons and neurosurgeons in surgeries involving the spine. The Individual Defendants were formerly employed by Plaintiff RX Medical in and around Oklahoma City, Oklahoma. RX Medical is, and was, while the Individual Defendants worked there, a distributor of surgical spine products for the equipment manufacturer ZimVie, Inc. ("ZimVie").

Three of the Individual Defendants—Melton, Poos, and Cline—entered into purported Employee Non-Compete Agreements with RX Medical that forbid those individuals, both "directly and indirectly," from soliciting *any* customer of RX Medical from *any* point in those Defendants' tenure with RX Medical. Defendant Perry's agreement with RX Medical is even broader in that it prohibits him from "directly or indirectly soliciting" not just customers of RX Medical, but customers of Zimmer (the alleged predecessor of ZimVie) as well, regardless of whether or not he ever had any contact with those customers, along with a blanket non-competition provision that bars him from working for a competitor anywhere in his former assigned territory. Defendants Bullard, Mason, McDonald, and Moore have no non-solicitation or non-competition

---

[1] As explained in Defendants' Motion to Dissolve, the exception is Defendant Kristy Moore, who worked purely in an administrative capacity, did not solicit customers for RX Medical, and does not solicit customers for Summit Spine.

restrictions whatsoever, nor do Plaintiffs allege as much. As explained in Defendants' Motion to Dissolve the TRO, the restrictions that do exist in Defendants Melton, Poos, Cline, and Perry's agreements are overbroad and unenforceable under Oklahoma law.[2]

The Individual Defendants resigned from RX Medical on August 12, 2022 and joined Stryker (except Moore, who joined Defendant Summit Spine Solutions, LLC ("Summit Spine")), and Plaintiffs filed this lawsuit a week later. Plaintiffs allege that the Individual Defendants not only breached their agreements with RX Medical, but misappropriated Plaintiffs' alleged confidential information and misused its computer systems. In fact, Plaintiffs allege that *all* of the Defendants, including Stryker, Summit Spine, DIGSS Investments, LLC, and RD Medical, LLC, violated the Computer Fraud and Abuse Act (the "CFAA") by improperly accessing and using Plaintiffs' computer systems. Put differently, the *only* basis for the injunction against the majority of the Defendants (those Individual Defendants without non-solicitation agreements and the corporate Defendants) is the alleged misuse of confidential information allegedly taken from Plaintiffs' computer systems in violation of the CFAA. Yet, Plaintiff has not identified any evidence supporting this broad generalization as to each Defendant.

---

[2] As explained in Defendants' Motion to Dissolve, Oklahoma law is clear that prohibitions on "indirect" solicitation are unenforceable. Plaintiffs' Response to that Motion appears to concede as much, but then asks this Court to enforce such a restriction anyway. (Dkt. 14, pp. 14-15.) Moreover, despite repeatedly insisting that they are only seeking an injunction against active solicitation of customers, Plaintiffs pointedly never address the two letters they sent to Defendants' counsel demanding that the Individual Defendants cease all contact, not just solicitation, with both customers *and* vendors, even though the latter are not mentioned in Plaintiffs' purported agreements. (Dkt. 6-4 and 6-5.)

Despite the fact that the TRO entered against the majority of Defendants rests upon those claims of misuse of confidential information and violation of the CFAA, Plaintiffs have yet to identify what confidential information is allegedly being used, by whom, when, how, or what irreparable harm was allegedly done to Plaintiffs as a result. Nor have Plaintiffs identified exactly what information was improperly accessed and altered in their computer systems, by whom, or when. While Plaintiffs generally refer to a handful of calendar appointments that were allegedly deleted from their computer systems by certain Individual Defendants, Plaintiffs never identify such alleged conduct for *all* of the Defendants, and Plaintiffs now also admit that they were able to recover at least some, if not all, of that information on their own. (Dkt. 14-3, ¶ 5.) Moreover, Plaintiffs never explain what the basis is for their allegations of improper conduct under the CFAA against *all* of the Individual Defendants when, according to Plaintiff's own investigation, there is no evidence of most of the Individual Defendants ever deleting anything. (Dkt. 14-3, p. 4.)[3] Plaintiffs give no indication what the basis is for alleging that the corporate Defendants improperly accessed Plaintiffs' computer systems, which on its face is likely impossible.

---

[3] This is not the only instance in which the claims made by Plaintiffs in their filings do not match what the exhibits attached to those filings state. Plaintiffs' Response to Defendants' Motion to Dissolve claims that *all* of the Individual Defendants orchestrated a plan to leave RX Medical, join Stryker, and convert all of Plaintiffs' business a full seven months before they actually did so. (Dkt. 14, p. 4.) Yet the alleged support for that claim is an audio recording of a conversation between a single Defendant, Rob Melton, and Plaintiffs' manager Greg Oplotnik. In that call, Melton refers to seven months ago as the point when he made his decision that he could no longer work for RX Medical, without any reference to having decided to join Stryker at that point. (Dkt. 14-1, 14:2-9.)

Plaintiffs generally refer to *all* of the Individual Defendants improperly soliciting customers or breaching their fiduciary duties to Plaintiffs by soliciting customers, yet provide no details as to what each Individual Defendant allegedly did or when, and it is beyond dispute that Defendant Moore has no customer-facing role in the first place. Plaintiffs' Response to Defendants' Motion to Dissolve identifies a single surgeon allegedly solicited by Defendant Cline (Plaintiffs notably do not allege that the surgeon in question actually stopped using RX Medical), but Plaintiffs never explain why that single, disputed instance should be imputed to every other Defendant. (Dkt. 14-4.) Plaintiffs never give any specific information as to what each Individual Defendant allegedly did to solicit Plaintiffs' customers, such as which customers were solicited, by whom, or when. Similarly, Plaintiffs claim that *all* of the Individual Defendants "surreptitiously submitted pricing bids to Plaintiffs' hospital customers" during their employment, yet never identify who did so, when, or what facilities were allegedly involved. Indeed, Plaintiffs' own filings with this Court claim that Plaintiffs are still gathering information to support their claims (Dkt. 14, p. 18), yet at the same time Plaintiffs are demanding an evidentiary hearing on their Motion for Preliminary Injunction. Simply put, Plaintiffs are seeking to rush into a preliminary injunction hearing and obtain an Order putting the Individual Defendants out of work for a year before Plaintiffs have identified the basis for their claims in the first place.

## ARGUMENT

In order to present the facts of this case to the Court as completely as possible for purposes of a hearing for preliminary injunction, and to discover the basis for Plaintiffs'

claims against them, Defendants need to conduct limited, expedited discovery. Specifically, Defendants need leave to serve limited interrogatories and requests for production, and to depose certain representatives of Plaintiffs.

Rule 26(d) of the Federal Rules of Civil Procedure authorizes this Court to enter an Order permitting expedited discovery in connection with preliminary injunction motions seeking to prevent irreparable injury. *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D. D.C. 1996) ("Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings"); *APMC, Inc. v. Fogarty*, No. CIV-08-249-L, 2008 WL 11417408, at *2 (W.D. Okla. Oct. 3, 2008) (allowing expedited discovery on "issues relevant to plaintiff's request for injunctive relief); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) ("In addition, expedited discovery may be appropriate in cases where the plaintiff seeks a preliminary injunction."); Advisory Committee Notes to Fed. R. Civ. P. 26(d) ("Discovery can begin earlier . . . in some cases, such as those involving requests for a preliminary injunction").

Courts within the Tenth Circuit Court of Appeals generally apply the reasonableness standard to requests for expedited discovery. *See Sunflower Elec. Power Corp. v. Sebelius*, 2009 WL 774340, at *2 (D. Kan. Mar. 20, 2009). "Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [other party]

to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Id.*

Here, Defendants' request to conduct expedited discovery is reasonable and narrowly tailored to the allegations presented in Plaintiffs' request for preliminary injunctive relief. The need for discovery is great: if Defendants must wait to take discovery in the normal course, they will be forced to present their case at a hearing on Plaintiffs' request for preliminary injunction with little idea of what they are being accused of in the first place, much less a complete record. The Individual Defendants are already purportedly barred from working with customers as result of the TRO (based on Plaintiffs' overbroad and improper interpretation of the TRO and Oklahoma law), and all of the Defendants will suffer irreparable injury if that injunctive relief remains in place while discovery proceeds in the ordinary course. The breadth of the requested discovery is narrowly tailored to the allegations presented in Plaintiffs' Petition and request for a preliminary injunction, and requests information and documents that the Plaintiffs should have collected before filing their claims. The burden on Plaintiffs to respond to that discovery is minimal, and the timing of those requests is driven by Plaintiffs' decision to seek an *ex parte* TRO and now a preliminary injunction.

Defendants, therefore, request that this Court enter an Order allowing the depositions of two representatives of Plaintiffs—Brandon Rouse and Greg Oplotnik—on three (3) calendar days' notice, and requiring Plaintiffs to produce requested documents and respond to interrogatories within seven (7) calendar days from the date of receipt thereof. Proposed expedited discovery requests are attached as <u>Exhibits 1 and 2</u>. In

addition, to allow the Court to effectively and completely evaluate the evidence relevant to this matter, Defendants also seek an Order requiring the parties to preserve all evidence relevant to the facts and circumstances alleged in Plaintiffs' Petition and Emergency Motion. This includes, but is not limited to, hard copy or electronic files of documents, computer files, hard drive data, ambient data, electronic mail messages, instant messages, contracts, invoices, files, correspondence and phone logs in Plaintiffs' custody or control or otherwise available to Plaintiffs concerning or relevant to the issues set forth in Plaintiffs' Complaint and Emergency Motion for Temporary Injunction. Such an Order will ensure that the Court has all necessary information available to it as it considers Plaintiffs' request for injunctive relief.

## CONCLUSION

Defendants respectfully request that this Court enter an Order granting the following relief:

1. Plaintiffs shall respond to Defendants' written discovery requests within seven (7) calendar days of receipt thereof;

2. Brandon Rouse and Greg Oplotnik shall each appear for deposition upon three (3) calendar days' notice; and

3. All evidence relevant to the facts and circumstances alleged in Plaintiffs' Petition, Plaintiffs' Emergency Motion for a Temporary Injunction, and Defendants' Motion to Dissolve shall be preserved by the parties.

Respectfully submitted,

/s/ *Kiran A. Phansalkar*
Kiran A. Phansalkar, OBA #11470
J. Dillon Curran, OBA #19442
Preston M. Sullivan, OBA #33489
Conner & Winters, LLP
1700 One Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102
Telephone:  (405) 272-5711
Facsimile:  (405) 232-2695
Email:   kphansalkar@cwlaw.com
　　　　dcurran@cwlaw.com
　　　　psullivan@cwlaw.com

and

Michael D. Wexler, IL #6207847
 *(admitted pro hac vice)*
Kevin J. Mahoney, IL #6299398
 *(admitted pro hac vice)*
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL  60606-6448
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000
Email:   kmahoney@seyfarth.com
　　　　mwexler@seyfarth.com

**Attorneys for Defendants Rob Melton, Justin Poos, Brady Cline, Todd Perry, Shelby Bullard, Greg Mason, Josh McDonald, Kristy Moore, DIGSS Investments, LLC, Stryker Corporation, Summit Spine Solutions, LLC, and RD Medical, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. Based on the records on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the ECF registrants of record, namely:

Jason A. Ryan, OBA #18824
Patrick R. Pearce, Jr., OBA #18802
Corey A. Neller, OBA #19534
Ryan Whaley
400 N. Walnut Ave.
Oklahoma City, OK  73104
Telephone:  (405) 239-6040
Facsimile:  (405) 239-6766
Email: jryan@ryanwhaley.com
ppearce@ryanwhaley.com
cneller@ryanwhaley.com
*Attorney for Plaintiffs*
*RX Medical, LLC, ROK Sales, LLC,*
*and ROK Medical Management, LLC*

/s/ *Kiran A. Phansalkar*
Kiran A. Phansalkar