## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RX MEDICAL, LLC; ROK SALES, LLC; and ROK MEDICAL MANAGEMENT, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 22-cv-00731-PRW |
| ROBEN MELTON; JUSTIN POOS; BRADY CLINE; TODD PERRY; SHELBY BULLARD; GREG MASON; JOSHUA MCDONALD; KRISTY MOORE; DIGSS INVESTMENTS, LLC; STRYKER CORPORATION; SUMMIT SPINE SOLUTIONS, LLC; and RD MEDICAL, LLC, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>AMENDED COMPLAINT</u>

Plaintiffs, RX Medical, LLC, ROK Sales, LLC, and ROK Management, LLC ("Plaintiffs"), for their claims against Defendants, Roben Melton, Justin Poos, Brady Cline, Todd Perry, Shelby Bullard, Greg Mason, Joshua McDonald, Kristy Moore, DIGSS Investments, Inc., Stryker Corporation, Summit Spine Solutions, LLC, and RD Medical, LLC state as follows:

1. Plaintiff, RX Medical, LLC is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

2. Plaintiff, ROK Sales, LLC is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

3. ROK Medical Management, LLC is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

4.     Plaintiffs, RX Medical, LLC, ROK Sales, LLC, and ROK Medical Management, LLC have common ownership and are all part of the RX Medical Family of Companies.

5.     Defendants, Rob Melton, Justin Poos, Brady Cline, Todd Perry, Shelby Bullard, Greg Mason, Joshua McDonald, Kristy Moore (hereinafter collectively referred to as "Individual Defendants") are citizens of the State of Oklahoma and each reside in Oklahoma County, State of Oklahoma.

6.     Defendant DIGSS Investments, LLC ("DIGSS") is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

7.     Defendant Stryker Corporation ("Stryker") is a foreign corporation formed under the laws of a state other than Oklahoma.   Stryker does business in the State of Oklahoma and in Oklahoma County and can be found at their offices located at 1141 N. Robinson Avenue, Oklahoma City, Oklahoma 73103

8.     Defendant Summit Spine Solutions, LLC ("Summit Spine") is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

9.     Defendant RD Medical, LLC is a domestic corporation with its principal place of business in Oklahoma County, State of Oklahoma.

10.     Plaintiffs provide marketing, sales, and distribution services to medical device manufacturers.   Plaintiffs have contractual agreements with medical product manufacturers to market, sell, and distribute the manufacturers' medical products to physicians, hospitals, and other healthcare facilities to be used in the medical and surgical treatment of patients.

2

11.     For more than twenty (20) years, Plaintiffs have worked to establish, and have established, relationships with physicians, medical groups, hospitals, and other healthcare providers within Oklahoma who purchase and use their medical products.

12.     A large part of Plaintiffs' business is the marketing, sale, and distribution of spine products i.e., products used in the treatment of patients undergoing spine surgery.

13.     Plaintiffs have a complete line of spine products. That is to say that Plaintiffs carry every product that their spine surgeon or hospital customers needed to complete a spine surgery.   Plaintiffs do this by contracting with several different product manufacturers to ensure there are no gaps in their line of spine products.

14.     During all times relevant herein, RX Medical had a contractual agreement with ZimVie, Inc. to market, sell, and distribute its spine products to spine surgeons practicing in Oklahoma.   The ZimVie contract was Plaintiffs primary line of spine products.

15.     ZimVie, however, does not offer all products that Plaintiffs' spine surgeon and hospital customers may need in their spine surgeries.   To fill the gaps in the ZimVie product line, Plaintiffs contracted with other third-party medical device manufacturers, including, but not limited to, Centinel Spine, Spineology, and Zavation.   As a result, Plaintiffs have a complete and comprehensive line of spine products to offer its customers – the physicians and hospitals that purchase its products.

16.     Plaintiffs had a team of individuals employed to market, sell, distribute, and service its spine products ("Spine Team").   The Individual Defendants, Melton, Poos,

Cline, Perry, Bullard, Mason, McDonald and Moore were the core of Plaintiffs Spine Team and were employed by Plaintiffs to market, sell and distribute its spine products.

17.     Plaintiffs' Spine Team was managed by Defendant Poos.  Defendant Poos had two sales teams under him, one managed by Defendant Melton and the other by Defendant Cline.  Defendants Melton and Cline each managed the other six (6) sales representatives, including Defendants Perry, Bullard, Mason, and McDonald.  Moore was the operations manager over revenue management, and inventory management.  All Individual Defendants participated in business management and strategic business planning for Plaintiffs.

18.     Through years of employment with Plaintiffs, the Individual Defendants were provided and gained knowledge of Plaintiffs' confidential trade secret information.  Such information includes, but is not limited to, strategic pricing information, customer lists, customer preference data, customer usage data, and market data, and distributorship/agency agreements.

19.     In consideration of and as a condition of RX Medical's employment of Defendants Melton, Poos, and Cline, each individually entered an Employee Non-Compete Agreement with RX Medical that prohibited Melton, Poos, and Cline, from soliciting RX Medical's existing customers for one (1) year following the termination of their employment.  Specifically, the Employee Non-Compete states:

> For Good consideration, and in consideration of my being employed, whether on a sub contract basis or as a full time employee, in whole or in part by RxMedical, I the undersigned agree that upon my termination of employment and notwithstanding the cause of termination, I shall not compete with the business of the Firm or its successors or assigns.

> The term "not compete" as used in this agreement shall mean that I shall not directly or indirectly, or in any capacity, on my own behalf or on behalf of any other firm undertake or assist in the solicitation of any client or account of the Firm existing during the course of my employment with Rx Medical.
>
> This non-compete agreement shall remain in full force and in effect for one year commencing with the date of employment termination.

*See* Ex. 1, The Employee Non-Compete Agreements for Defendants Melton, Poos, and Cline (emphasis added).

20.     In consideration and as a condition of Defendant Perry's employment with RX Medical, Defendant Perry entered into a Confidentiality and Non-Competition Agreement with RX Medical.  Pursuant to the agreement, Perry agreed: (a) not to solicit any customer of RX Medical or Zimmer (now ZimVie) for a period of one (1) year following the termination of his employment with RX Medical; (b) not to solicit other RX Medical sales associates to terminate their relationship with RX Medical or ZimVie to become employed or associated with a competitor of RX Medical or ZimVie for a period of one (1) year following his termination; (c) not to compete with RX Medical or ZimVie in a defined geographical area for a period of one year; and (d) not to disclose certain confidential information of RX Medical and/or ZimVie for a period of five (5) years following termination of employment.  *See* Ex. 2, Confidentiality and Non-Competition Agreement between RX Medical and Defendant Perry.

21.     Defendant Stryker is a competitor of Plaintiffs and ZimVie.   Stryker manufacturers similar spine products to those manufactured by ZimVie.  Stryker also has a sales force that markets, sells, and distributes its spine products to physicians and

hospitals in the treatment of patients undergoing spine surgery, making them a direct competitor of Plaintiffs in the Oklahoma market.

22.     Defendant RD Medical is an independent medical distributor that is contracted to distribute Defendant Stryker's spine products in the Oklahoma market. Upon information and belief, Defendant RD Medical and/or also contracts with other third party device manufacturers for spine products to fill gaps in Stryker's spine product line.

23.     Defendant Summit Spine is a medical distributor that is contracted to distribute certain third-party Spine Products in the Oklahoma market.

24.     Upon information and belief, RD Medical and Summit Spine use the same sales representatives and work together to offer a complete line of spine products in the Oklahoma market and compete directly with Plaintiffs.

25.     At approximately 12:00 p.m. on Friday, August 12, 2022, Plaintiffs were notified by the Individual Defendants that they, and Plaintiffs entire Spine Team (save two newly hired individuals), were terminating their relationship with Plaintiffs effective that day at 5:00 p.m. central time.

26.     The Individual Defendants left Plaintiffs' employment to become employees of Stryker and to distribute Stryker's spine products in the Oklahoma market. The Individual Defendants are also working for or with Defendant Summit Spine to contract with third parties to distribute supplemental spine products – the same third-party manufacturers that have contracts with Plaintiffs.

27.     For several months prior to the termination of the Individual Defendants' employment with Plaintiffs, the Defendants worked in concert to develop and execute a scheme intended to overtake and destroy Plaintiffs' spine business.

28.     For several months prior to the termination of their employment with Plaintiffs, the Individual Defendants colluded and conspired with Stryker and RD Medical, to steal Plaintiffs' customers (physicians and hospitals) and convert those customers from the ZimVie's spine product line to Stryker's spine product line.

29.     The Individual Defendants actively solicited Plaintiffs' customers to switch from the ZimVie spine products to Stryker's spine products both before and after their employment with Plaintiffs ended.

30.     For several months prior to the termination of their employment with Plaintiffs, the Individual Defendants colluded and conspired with Summit Spine, DIGSS, and/or other affiliate entities to take many, if not all, of the third-party contracts or replace it with other competing third-party contracts for the supplemental spine products held by Plaintiffs.

31.     The Individual Defendants was working in concert with Summit Spine, and/or DIGSS, and/or other affiliate entities to actively solicited manufacturers that Plaintiffs had third-party contracts with to switch those contracts to Summit Spine, DIGSS, other affiliate entities and/or themselves individually.  This solicitation occurred both before and after their employment with Plaintiffs ended.

32.     Part of the Individual Defendants job with Plaintiffs was to work with Plaintiffs' hospital customers to negotiate and set pricing for Plaintiffs' spine products.

The Individual Defendants accessed and used Plaintiffs' pricing to begin competing with Plaintiffs while still employed. Specifically, while still employed with Plaintiffs, Defendants surreptitiously submitted pricing bids to Plaintiffs' hospital customers on spine products that the Individual Defendants would be distributing after leaving their employment with Plaintiffs. These are spine products that compete directly with those offered by Plaintiffs. The Individual Defendants used Plaintiffs' pricing to match the pricing on the bids for the competing products.

33.     While employed by Plaintiffs, Defendant Poos, Defendant Melton, Defendant Cline, and Defendant Moore colluded to contract with third-party manufacturers through DIGSS and placed orders for spine products, sold spine products, and collected revenue from the sale of spine products that compete with those products sold by Plaintiffs.

34.     While employed by Plaintiffs, the Individual Defendants colluded and conspired with Plaintiffs' third-party contract manufacturers to prepare and order product for surgical cases the week following terminations of Individual Defendants' employment interfering with Plaintiffs' contract with such third-party manufacturers.

35.     Just prior to leaving, and while still employed by Plaintiffs, the Individual Defendants were distributing Plaintiffs' customer lists and customer information to third party spine product manufacturers for competing products that the Individual Defendants would be distributing once their employment with Plaintiffs was terminated.

36.     Stryker and RD Medical colluded with the Individual Defendants to manufacture, order, and deliver to Plaintiffs' customers the Stryker spine products that the

Individual Defendants would need for surgeries the Monday following their Friday termination.

37.    Prior to leaving, and while still employed by Plaintiffs, the Individual Defendants colluded with the Centinel Spine to order Centinel Spine products to be sold and distributed by the Individual Defendants to Plaintiffs' customers the Monday immediately following their Friday termination in direct violation of Plaintiffs contract with Centinel Spine.

38.    Defendants orchestrated every detail of their takeover of Plaintiffs' spine business down to their final acts.  Before the Individual Defendants sent in their resignations on Friday, August 12, 2022, they erased all the upcoming spine surgeries that had been scheduled by Plaintiffs' customers from Plaintiffs' electronic calendars putting patients, physicians, hospitals, and the Plaintiffs at great risk.  Moreover, the Individual Defendants failed to return Plaintiffs' Spine Product inventory or notify Plaintiffs of its whereabouts.

39.    In what can only be described as a remarkable and seamless heist, the Individual Defendants successfully converted most of Plaintiffs' spine business before ever terminating their employment relationship with Plaintiffs.

40.    On Monday, August 15, 2022 – merely one business day after terminating their employment with Plaintiffs – the Individual Defendants along with representatives of Stryker, RD Medical, and Summit Spine were in surgeries with Plaintiffs' customers using Stryker Spine Products, Plaintiffs' ZimVie products (that they were no longer authorized to use) and Plaintiffs' third-party spine products – the same surgeries that were on

Plaintiffs' calendars just days before. Such efficiency can only be accomplished through the planning and collusion of all Defendants.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

41.     Plaintiff, RX Medical, adopts and incorporates herein paragraphs 1 through 40 above and further alleges and states a cause of action for breach of contract against Defendants Melton, Poos, Cline, and Perry as follows:

42.     In consideration of and as a condition of RX Medical's employment of Melton, Poos, Cline, and Perry, each of these individuals entered a non-compete agreement with RX Medical.  *See* Ex. 1 & 2.  The non-compete agreements that Melton, Poos, Cline, and Perry individually entered with RX Medical are binding contracts under Oklahoma law.

43.     Pursuant to the terms of the non-compete agreements, Defendants Melton, Poos, Cline, and Perry each agreed not to solicit any client or account of RX Medical for a period of one (1) year following the termination of their employment.

44.     In the non-compete agreement between Defendant Perry and RX Medical, Defendant Perry additionally agreed not to (a) solicit RX Medical's sales associate to become employed by a competitor for a period of one (1) year following the termination of his employment; (b) not to compete with RX Medical or ZimVie in a defined geographical location for a period of one (1) year; and (c) not to disclose certain

10

confidential information of RX Medical and/or ZimVie for a period of five (5) years following termination of employment.

45.    Defendants Melton, Poos, and Cline breached the terms of their respective non-compete agreements with RX Medical by soliciting RX Medical's customers before one (1) year had expired from the date of the termination of their employment.

46.    Defendant Perry breached the terms of his non-compete agreement with RX Medical by within one (1) year of the termination of his employment: (a) soliciting RX Medical's customers; (b) soliciting RX Medical's sales associates to work for a competitor; and (c) competing with RX Medical in the Oklahoma market.  Defendant Perry further breached the terms of his non-compete agreement by disclosing confidential information of RX Medical within five (5) years of the termination of his employment.

47.    Plaintiff, RX Medical, has been damaged as a direct and proximate result of Melton, Poos, Cline, and Perry's breach of their respective non-compete agreements.  Such damages exceed $75,000.00, exclusive of interest, attorney fees, and costs.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

48.    Plaintiffs adopt and incorporate herein paragraphs 1 through 47 above and further allege and state a cause of action for breach of fiduciary duty against the Individual Defendants as follows:

49.    A fiduciary relationship existed between Plaintiffs and the Individual Defendants.

50.     The Individual Defendants as senior-level managers and senior-level employees and agents of Plaintiffs owed certain fiduciary duties to Plaintiffs, including, but not limited to:

      a.     duty to act primarily for the benefit of Plaintiffs while working in the course and scope of their employment/agency;

      b.     duty of good faith;

      c.     duty of loyalty;

      d.     duty to act in the best interest of Plaintiffs;

      e.     duty to use a degree of care that an ordinary person would use under similar circumstances;

      f.     duty to protect confidential, trade secret and/or proprietary information;

      g.     duty to protect Plaintiffs' property, including its business information, records, documents, scheduled deliveries and services;

      h.     duty to protect Plaintiffs' business contracts, expectations and reputation; and

      i.     duty to protect Plaintiffs' economic advantages and economic expectations.

51.     As described herein, the Individual Defendants breached each of these duties owed to Plaintiffs, and did so, intentionally, maliciously and with the intent to harm Plaintiffs.

52.     Plaintiffs have been damaged as a direct and proximate result of the Individual Defendants breach of their fiduciary duties to them.  Such damages exceed $75,000.00, exclusive of interest, attorney fees, and costs.

53.    The Individual Defendants' conduct alleged herein was gross, willful and/or wanton, such that punitive or exemplary damages should be imposed in Plaintiffs' favor and against the Individual Defendants in amounts exceeding $75,000.00, exclusive of interest, attorney fees, and costs.

### THIRD CAUSE OF ACTION

### TORTIOUS INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS AND/OR WITH PROSPECTIVE ECONOMIC ADVANTAGE

54.    Plaintiffs adopt and incorporate herein paragraphs 1 through 53 above and further allege and state a cause of action for tortious interference with contractual or business relations against all Defendants as follows:

55.    Plaintiffs reasonably expected to continue to market, sell, distribute, and supply medical devices and products to physicians and hospitals pursuant to the contracts described herein. Defendants knew of Plaintiffs' business relationships with medical device manufacturers, medical product manufacturers physicians and hospitals.

56.    Defendants intentionally and maliciously prevented the Plaintiffs from continuing and/or fulfilling their business relationships and contracts with device suppliers, device manufacturers, physicians and hospitals.

57.    As described above, Defendants used improper and/or unfair means to prevent Plaintiffs from continuing business relationships with manufacturers, physicians, and hospitals.

58.    Defendants were aware that RX Medical had a contract with ZimVie to market, sell and distribute ZimVie's Spine Products to its customers.

13

59.     The Individual Defendants tortiously interfered with the ZimVie Contract and tortiously interfered with the business relations that RX Medical had with its established customers when they (a) wrongfully solicited RX Medical's customers away from RX Medical while still employed by RX Medical and working within the scope of their employment; (b) wrongfully solicited RX Medical's customers to change from ZimVie's spine products to Stryker's spine products while employed by RX Medical and working within the course and scope of their employment; (c) erased the scheduled surgical procedures from the RX Medical calendars, in an effort to prevent RX Medical from servicing RX Medical customers in the days following their resignation; and (d) failed to return or disclose the location of ZimVie inventory upon the termination of their employment thereby precluding that inventory from being used for RX Medical customers in the days following their termination.

60.     Stryker and RD Medical interfered with the RX Medical's contracts and business relations when it conspired with and induced the Individual Defendants to actively solicit RX Medical's Customers while the Individual Defendants were employed by and working within the course and scope of their employment with Plaintiffs.

61.     At all material times herein, Stryker was aware that Defendants Melton, Poos, Cline, and Perry were contractually prohibited from soliciting RX Medical's existing customers for one (1) year following the termination of their employment with RX Medical.  Despite this, Stryker conspired with and wrongfully induced Melton, Poos, Cline, and Perry to solicit RX Medical's Customers both before and after Melton, Poos, Cline and Perry terminated their relationship with RX Medical.

62.    At all material times herein, Stryker was aware that Defendant Perry was also contractually prohibited from (a) soliciting RX Medical's sales associates to work for a competitor, (b) competing with RX Medical in the Oklahoma market and disclosing or using confidential information of RX Medical following his termination.  Despite this, Stryker conspired with and wrongfully induced Perry to breach these contractual provisions.

63.    The Individual Defendants, DIGSS and Summit Spine were aware of the third-party contracts for supplemental spine products held by Plaintiffs.  Including, but not limited to Plaintiffs' third-party contracts with Centinel Spine, Spineology, and Zavation. The Individual Defendants and Summit Spine tortiously interfered with the above referenced third-party contracts by contacting the Centinel Spine, Spineology, and Zavation before and after the Individual Defendants' employment ended with Plaintiffs to persuade them to move their business to the Individual Defendants and/or Summit Spine.

64.    The Defendants used improper, wrongful and unfair means in the interference with the contractual and business relations of Plaintiffs.

65.    Defendants intended to interfere with or were substantially certain that their actions would interfere with Plaintiffs' contracts with medical device suppliers, and medical device manufacturers.

66.    Plaintiffs suffered damages as a direct and proximate result of Defendants interference with the contractual and business relations of the Plaintiffs.  Such damages exceed $75,000.00, exclusive of interest, attorney fees and costs.

67.     The Defendants' conduct alleged herein was gross, willful and/or wanton, such that punitive or exemplary damages should be imposed in Plaintiffs' favor and against the Defendants in amounts exceeding $75,000.00, exclusive of interest, attorney fees, and costs.

## FOURTH CAUSE OF ACTION

### MISAPPROPRIATION OF TRADE SECRETS

68.     Plaintiffs adopts and incorporates herein paragraphs 1 through 67 above and further alleges and states a claim for misappropriation of trade secrets against Defendants as follows:

69.     As part of their employment, Defendants had access to Plaintiffs' trade secrets, including, but not limited to, strategic pricing information, customer lists, customer preference data, customer usage data, market data, and contracts with manufacturers and hospitals.

70.     Plaintiffs' trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic benefit value from its disclosure or use.

71.     Plaintiffs take reasonable efforts to maintain the secrecy of their trade secrets.

72.     The Individual Defendants misappropriated Plaintiffs trade secrets both before and after terminating their employment with Plaintiffs in various ways, including, but not limited to: (a) using plaintiffs strategic pricing to provide bids to Plaintiffs' customers on products that compete with Plaintiffs; and (b) using Plaintiffs' customer lists and customer preference and usage data and terms of all manufacturing contracts to

compete with Plaintiffs and providing such data to third parties for competition against Plaintiffs.

73.     The misappropriation of Plaintiffs' trade secrets has been used by Defendants and other third parties, including Stryker, RD Medical, Summit Spine, and Centinel Spine to their advantage and to Plaintiffs' detriment.

74.     Plaintiffs are entitled to injunctive relief and other equitable relief as contemplated the Uniform Trade Secrets Act.

75.     Plaintiffs have been damaged by the Individual Defendants' misappropriation of Plaintiffs' trade secrets. Such damages exceed $75,000.00, exclusive of interest, attorney fees and costs.

76.     The Individual Defendants' conduct alleged herein was willful and malicious, such that punitive or exemplary damages should be imposed in Plaintiffs' favor and against the Individual Defendants in amounts exceeding $75,000.00, exclusive of interest, attorney fees, and costs, as contemplated by the Uniform Trade Secrets Act.

## FIFTH CAUSE OF ACTION

### CIVIL CONSPIRACY

77.     Plaintiffs adopt and incorporate herein paragraphs 1 through 92 above and further allege and state a claim for civil conspiracy against all Defendants as follows:

78.     Defendants colluded and conspired to wrongfully and tortiously interfere with Plaintiffs' contracts and business relations for the purpose of acquiring their entire spine business and all of the employees in their Spine Department.

79.     Defendants carried out their conspiracy through the unlawful means of tortiously interfering with Plaintiffs' contracts and business relations.

80.     Plaintiffs suffered damages as a direct and proximate result of Defendants civil conspiracy.   Such damages exceed $75,000.00, exclusive of interest, attorney fees, and costs.

81.     Defendants conduct alleged herein was gross, willful and/or wanton, such that punitive or exemplary damages should be imposed in Plaintiffs favor and against the Individual Defendants in amounts exceeding $75,000.00, exclusive of interest, attorney fees, and costs.

## <u>PRAYER FOR RELIEF</u>

Wherefore, premises considered, Plaintiffs seek judgment against each Defendant based on the causes of action set forth above in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) for actual or compensatory damages and seeks punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), injunctive and equitable relief, attorney fees, court costs, and for such other and further relief as to which the Court determines Plaintiffs are entitled.

**JURY TRIAL DEMANDED**

Respectfully submitted,


*s/Jason A. Ryan*

PATRICK R. PEARCE, JR., OBA #18802
JASON A. RYAN, OBA #18824
COREY A. NELLER, OBA #19534
**RYAN WHALEY**
400 North Walnut Avenue
Oklahoma City, Oklahoma 73104
(405) 239-6040
(405) 239-6766 FAX
rpearce@ryanwhaley.com
jryan@ryanwhaley.com
cneller@ryanwhaley.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2022, I electronically transmitted the attached document to the Clerk of Court using the Electronic Filing System for filing.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

*s/Jason A. Ryan*

Jason A. Ryan