# CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

**THIS AGREEMENT** (this "Agreement") is entered into as of the 1st day of March, 2013 (the "Effective Date"), by and between RX Medical, LLC located at 409 East California Avenue, Oklahoma City, OK 73104 ("Representative"), and Todd Perry ("Associate").

## RECITALS:

**WHEREAS,** Associate is an employee for Representative, which operates a business involved in the sale of orthopedic implants and devices and related products, services and supplies located at 409 E. California Ave., Oklahoma City, OK 73104 (the "Business");

**WHEREAS,** Representative is a sales representative for Zimmer US, Inc. ("Zimmer") and has the right and obligation to solicit orders for certain orthopedic implants and devices and other medical products, services and supplies of Zimmer and/or its affiliates ("Products") within a certain geographic area described in Representative's agreement with Zimmer ("Company Territory");

**WHEREAS,** Associate desires to continue performing services for the Business in that portion of the Company Territory described in Exhibit 1 (the "Territory");

**WHEREAS,** doctors, hospitals, insurers and others ("Customers") purchase the Products under arrangements whereby the sale of the Products is made directly by Zimmer to the Customers;

**WHEREAS,** in connection with Representative's status as a sales representative for Zimmer, Representative has access to confidential and proprietary information of Zimmer;

**WHEREAS,** in the course of providing services for Representative, Associate will have access to confidential, proprietary and trade secret information of Representative and Zimmer;

**WHEREAS,** Representative has a contractual obligation to protect and preserve Zimmer's confidential, proprietary and trade secret information and desires to protect its own confidential, proprietary and trade secret information;

**EXHIBIT 2**

**WHEREAS**, during the course of Associate's relationship with Representative, Associate will receive training (the "Training") relating to the Products and surgery procedures, and other training that will substantially improve Associate's job skills and employment prospects;

**WHEREAS**, Representative and/or Zimmer will incur substantial costs in providing the Training to Associate; and

**WHEREAS**, Representative is willing to provide the Training to Associate only on the express condition that Associate enter into this Agreement;

**NOW, THEREFORE**, in consideration of the covenants and mutual agreements set forth herein and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## 1. Confidentiality and Non-Disclosure.

a. For purposes of this Agreement, the term "Confidential Information" means and includes any and all of Representative's and/or Zimmer's non-public information and data of or about Representative and/or Zimmer and their businesses, confidential and proprietary information, and trade secrets, including, but not limited to, the following: (i) all information not generally known or used by the competitors of Representative or Zimmer and which gives Representative or Zimmer a competitive advantage in the marketplace or could otherwise be harmful to Representative or Zimmer if disclosed without authorization; (ii) all "protected health information" as defined by HIPAA, including, but not limited to, any medical records or patient information that may be used to identify any particular patient; (iii) marketing, sales, and advertising information including: lists of actual or potential Customers; Customer preference data; marketing and sales techniques, strategies, efforts, and data; merchandising systems and plans; confidential Customer information including identification of purchasing personnel, account status, needs and ability to pay; business plans; product development and delivery schedules; market research and forecasts; marketing and advertising plans, techniques, and budgets; overall pricing strategies; the specific advertising programs and strategies utilized, and the success or lack of success of those programs and strategies; (iv) organizational information including: personnel and salary data; merger, acquisition and expansion information; and

information concerning methods of operation; (v) financial information such as: product costs; supplier information; overhead costs; profit margins; banking and financing information; and pricing policies; (vi) technical information including: product specifications, improvements, discoveries, developments, designs, inventions, techniques, and new products; (vii) information of third parties provided to Representative and/or Zimmer subject to nondisclosure restrictions for use in Representative's business for Zimmer; and (viii) all Customer lists and Customer information. Confidential Information does not include information which becomes generally known other than through disclosure (whether deliberate or inadvertent) by Associate or another person who has an obligation of confidentiality to Representative or Zimmer.

      b. In consideration of Representative providing the Training to Associate, during the term of Associate's relationship with Representative and for the Restricted Period (defined below), Associate will not reveal, report, publish, disclose or transfer any of the Confidential Information to any person or entity or use any of the Confidential Information for any purpose other than disclosure to authorized employees and agents of Representative or Zimmer or such other third parties who need such information in furtherance of Representative's or Zimmer's business and who are bound to maintain the confidentiality of the Confidential Information. The "Restricted Period" shall mean (i) five (5) years from the date of the expiration or termination of Associate's relationship with Representative (for whatever reason) if the item of Confidential Information at issue does not constitute a "trade secret" under applicable law, or (ii) indefinitely, if the item of Confidential Information at issue constitutes a "trade secret" under applicable law. Furthermore, Associate will notify Representative in writing of any circumstances surrounding any unauthorized use or knowledge of Confidential Information. The restrictions contained in this Section 1 shall not apply to disclosure of Confidential Information in judicial or administrative proceedings to the extent Associate is legally compelled to disclose such information, provided Associate shall have used his/her best efforts to, and shall have afforded Representative and Zimmer the opportunity to, obtain an appropriate protective order or other assurance satisfactory to Representative and Zimmer of confidential treatment for the information required to be disclosed.

c. Associate will adopt and implement all procedures prescribed from time to time by Representative to prevent unauthorized copying, use and disclosure of Confidential Information, and will otherwise maintain the secrecy of Confidential Information.

d. Any and all Confidential Information that Associate uses or creates or to which Associate has had access in the course of Associate's relationship with Representative, including any copies, excerpts and summaries thereof (whether maintained in written, printed, or electronic form) is, and shall at all times remain Representative's or Zimmer's sole and exclusive property. Associate waives and otherwise agrees to transfer to Representative any right, title, or interest Associate may have in such Confidential Information without further compensation.

e. Immediately upon expiration or termination of Associate's relationship with Representative (for whatever reason), Associate will return to Representative all of Representative's and Zimmer's papers, documents and things (and copies thereof), which are in Associate's possession or under Associate's control regardless whether such papers, documents or things contain Confidential Information.

f. Nothing in this Section 1 shall be deemed to prohibit Associate's use of his or her general know-how, as such term "know-how" is defined under applicable law, as long as such use does not require use of any trade secret as protected under applicable law.

## 2. Exclusive Relationship.

In consideration of Representative providing the Training to Associate, during Associate's relationship with Representative Associate will not, directly or indirectly, through any other person or entity, on his/her own account, or as an employee, independent contractor, agent, sales associate, consultant, partner, owner, officer, director or stockholder of any other person, partnership, corporation or other entity:

a. have any interest (other than an ownership interest of one percent (1%) or less in a publicly traded company) in or provide services for any business other than Representative, wherever located or operating, that manufactures, distributes, markets, sells or promotes orthopedic implants or devices or related medical products, services, instruments, or supplies; or

b. solicit, attempt to solicit or engage in discussions or other communications with any party with the purpose or intent of promoting, selling or obtaining orders for any orthopedic implants or devices or related medical products, services, instruments, or supplies other than soliciting orders and servicing accounts for the purchase of the Products in accordance with policies and procedures of Zimmer and Representative; or

c. engage in any business or activity that is competitive with the business of Representative and/or Zimmer, or make any preparations to engage in such competitive business or activities.

### 3. Covenant Not to Solicit Customers.

In consideration of the Representative providing the Training to Associate, for a period of twelve (12) months beginning on the later of (a) termination or expiration of Associate's or Zimmer's relationship with Representative for any reason, or (b) the date on which Associate begins to comply with this Section 3, Associate shall not (except with the prior written consent of Representative and Zimmer), directly or indirectly, on Associate's own behalf, or on behalf of any person, firm, corporation or other business or legal entity, solicit, attempt to solicit or engage in discussions or other communications with (regardless of who initiates such discussions or communications), any Restricted Customer (defined below) with the purpose or intent of promoting, selling or obtaining orders for any orthopaedic implants or devices or related medical products, services, instruments or supplies. A "Restricted Customer" is any person, firm, corporation or other business or legal entity which, during any part of the twenty-four (24) months period immediately preceding the expiration or termination of Associate's relationship with Representative:

a. (i) was an actual Customer of Representative, Zimmer, or an affiliate thereof, (ii) participated in or influenced the purchasing decisions of any actual Customer of Representative, Zimmer, or an affiliate thereof, or (iii) used the Products purchased by any actual Customer of Representative, Zimmer, or an affiliate thereof; and

b. was solicited or serviced directly or indirectly by Associate during his/her relationship with Representative or for which Associate had any sales or service responsibility or contact during his/her relationship with Representative.

For purposes of Subsection (a) in this Section 3, the term "Products" includes any orthopaedic implants, devices, or related medical products, instruments, services, or supplies sold, marketed, or promoted by Representative or Associate during any part of the twenty-four (24) month period immediately preceding the termination or expiration of Associate's or Zimmer's relationship with Representative.

Associate acknowledges that Representative and Zimmer have legitimate interests in protecting and preserving the Confidential Information. Associate acknowledges that Customers have regular and repeated dealings with Representative and Zimmer which result in systematic sales and business relations, and that Representative and Zimmer receive habitual and consecutive business from Customers to such an extent that Representative and Zimmer have a near-permanent relationship with Customers. Associate also acknowledges that the Confidential Information (including, without limitation, customers lists and contacts) is not a matter of public or general knowledge, has been developed by Representative or Zimmer at substantial cost and expense, and is extremely valuable and could not be easily replicated.

## 4. Covenant Not to Solicit Other Sales Associates.

In consideration of the Representative providing the Training to Associate, for a period of twelve (12) months immediately following (a) the expiration or termination of Associate's relationship with Representative for any reason or (b) Representative's relationship with Zimmer, Associate shall not (except with the prior written consent of Representative and Zimmer), directly or indirectly, on Associate's own behalf, or on behalf of any other person, firm, corporation or business entity, solicit or have discussions or other communication (regardless of who initiates such discussions or communications) with any sales associate of Representative, any sales associate of another sales representative of Zimmer, or any sales associate, employee or agent of Representative or any sales representative, employee or agent of Zimmer, for the purpose of causing that person to terminate its relationship with its employer or principal to become employed or associated with a competitor of Representative, another sales representative of Zimmer, or Zimmer: (i) in a capacity similar to the capacity in which that person performed services for Representative, another sales representative of Zimmer, or Zimmer, or (ii) in a capacity where that person's knowledge of the Confidential Information

would be useful to the competitor and/or detrimental to Representative, another sales representative of Zimmer, or Zimmer.

### 5. Covenant Not to Compete.

In consideration of Representative providing the Training to Associate, during Associate's relationship with Representative and for a period of twelve (12) months beginning on the later of (a) the expiration or termination of Zimmer's or Associate's relationship with Representative for any reason or (b) the date on which Associate begins to comply with this Section 5, Associate shall not (except with the prior written consent of Representative and Zimmer), directly or indirectly, on Associate's own behalf, or on behalf of any person, firm, corporation or other business or legal entity, have any interest in, provide services for or engage in any Competitive Business located, operating or offering or selling Products within the Restricted Geographic Area (a) in the same or similar capacity or function to that in which Associate worked for or provided services to Representative, (b) in any sales or marketing capacity or function, (c) in any business development capacity or function, (d) in any customer relationship capacity or function or (e) in any capacity in which Associate's knowledge of Zimmer's Confidential Information would facilitate or support Associate's work for the Competitive Business. For purposes of this Agreement, the term "Restricted Geographic Area" means and includes (i) the portion of Territory, as such Territory may be modified from time to time during Associate's relationship with Representative; (ii) any state or any portion of any state assigned to Associate by Representative for purposes of any sales or service activities or responsibilities at any time during the twenty-four (24) months immediately preceding the expiration or termination of Associate's relationship with Representative and (iii) any county of any state or commonwealth assigned to Associate or in which Associate engaged in any sales or service activities on behalf of Representative at any time during the twenty-four (24) months immediately preceding the expiration or termination of Associate's relationship with Representative. For purposes of this Agreement, the term "Competitive Business" means a business that offers, provides or sells any Products similar to or competitive with, or that could serve as a substitute for, any of the Products that are being offered or sold by Representative as of the date Associate's relationship with Representative terminates.

### 6. Reasonableness of Terms.

Associate acknowledges and agrees that the non-disclosure, non-solicitation and non-competition covenants contained in this Agreement are reasonably necessary to protect Representative's and Zimmer's legitimate business interests. Additionally, Associate acknowledges and agrees that the non-disclosure, non-solicitation and non-competition covenants are fair, reasonable, and appropriate in all respects, including, but not limited to, temporal duration, scope of prohibited activities and geographic area. Associate further acknowledges and agrees that the Restricted Customers do not, in the aggregate, constitute a significant percentage, as the case may be of the market for orthopaedic implants and devices. Associate further acknowledges and agrees that the non-disclosure, non-solicitation and non-competition covenants set forth in this Agreement will not pose any unreasonable hardship on Associate and that the terms of this Agreement will not prevent Associate from engaging in any trade on business including Associate's current occupation.

## 7. At Will Relationship.

Associate understands and acknowledges that nothing in this Agreement shall be understood, argued or interpreted to alter the at-will nature of the relationship between Associate and Representative, which may be terminated by Representative at any time for any lawful reason. Either Representative or Associate may terminate the relationship at any time, with or without cause.

## 8. Compliance with Company Policies and Standards.

Associate shall comply with all applicable rules and regulations of Representative and Zimmer, including, but not limited, to the policies and procedures of Zimmer, as are in effect from time to time. Associate shall comply with the AdvaMed Code of Ethics on Interactions with Health Care Professionals (as originally adopted on September 3, 2003, and including any subsequent amendments thereto) (the "Code"), any successor code, and any policies and procedures adopted by Representative or Zimmer in conjunction with or related to the Code (or the subject matter covered thereunder).

## 9. Severability, Modification of Restrictions.

The covenants and restrictions in this Agreement are separate and divisible, and to the extent any clause, portion or section of this Agreement is determined to be unenforceable or invalid for any reason, Representative and Associate acknowledge and agree that such unenforceability or invalidity shall not affect the enforceability or validity of the remainder of the Agreement. If any particular covenant, provision or clause of this Agreement is determined to be unreasonable or unenforceable for any reason, including, without limitation, the temporal duration, scope of prohibited activity, and/or geographic area covered by any non-competition, non-solicitation or non-disclosure covenant, provision or clause, Representative and Associate acknowledge and agree that such covenant, provision or clause shall automatically be deemed reformed such that the contested covenant, provision or clause will have the closest effect permitted by applicable law to the original form and shall be given effect and enforced as so reformed to whatever extent would be reasonable and enforceable under applicable law. The parties agree that any court interpreting any non-competition, non-solicitation or non-disclosure provisions of this Agreement shall have the authority, if necessary, to reform any such provision to make it enforceable under applicable law.

### 10. Remedies.

Associate acknowledges that a breach or threatened breach by Associate of Sections 1, 2, 3, 4 or 5 of this Agreement will give rise to irreparable injury to Representative and Zimmer, and that money damages will not be adequate relief for such injury. Accordingly, Associate agrees that Representative and Zimmer shall be entitled to obtain injunctive relief, including, but not limited to, temporary restraining orders, preliminary injunctions and/or permanent injunctions, without having to post any bond or other security, to restrain or prohibit such breach or threatened breach, in addition to any other legal remedies which may be available. In addition to all other relief to which it shall be entitled, Representative and Zimmer shall be entitled to recover from Associate all litigation costs and attorneys' fees incurred by Representative or Zimmer in any action or proceeding relating to this Agreement in which Representative or Zimmer prevails in any respect, including, but not limited to, any action or proceeding in which Representative or Zimmer seeks enforcement of this Agreement or seeks relief from Associate's violation of this Agreement.

### 11. Survival of Obligations.

Associate acknowledges and agrees that Associate's obligations under this Agreement, including, without limitation, Associate's non-disclosure, non-solicitation and non-competition obligations, shall survive the expiration or termination of Associate's relationship with Representative, whether or not such termination is with or without cause or whether or not it is voluntary or involuntary. Associate further acknowledges and agrees that Associate's non-disclosure, non-solicitation and non-competition covenants set forth in this Agreement shall be construed as independent covenants and that no breach of any contractual or legal duty by Representative or Zimmer shall be held sufficient to excuse or terminate Associate's obligations under this Agreement or to preclude Representative or Zimmer from obtaining injunctive relief or other remedies for Associate's violation or threatened violation of such covenants.

## 12. Governing Law.

This Agreement shall be construed and enforced in accordance with the laws of the State of Oklahoma, without application of any conflict of laws, rules or principles that would cause the application of the laws of any jurisdiction other than Oklahoma. The parties agree that any legal action relating to this Agreement shall be commenced and maintained exclusively before any appropriate state court located in Oklahoma County, Oklahoma, or the United States District Court for the District encompassing Oklahoma County, Oklahoma. The parties

hereby submit to the jurisdiction and venue of such courts and waive any right to challenge or otherwise object to personal jurisdiction or venue (including an objection based on inconvenient forum grounds) in any action commenced or maintained in such courts.

### 13. Successors and Assigns.

This Agreement and the rights and obligations hereunder, are not assignable or otherwise transferable by Associate. Representative may assign this Agreement, and the rights and obligations of Representative hereunder, to Zimmer, or to any person, entity or business that succeeds Representative as Zimmer's sales representative in all or part of the Territory, or to any person, entity or other business or legal entity that acquires all or substantially all of the business or assets of Representative ("Acquirer") so long as the Acquirer continues to serve as Zimmer's representative in the Territory, or to Zimmer.

### 14. Enforcement.

Representative or Zimmer may enforce any provision of this Agreement regardless of whether Associate has any claim or cause of action against Representative based on this Agreement or otherwise. Associate hereby waives any breach of this Agreement by Representative as a defense to Representative's or Zimmer's enforcement of this Agreement. Associate's sole and exclusive remedy for any claim or cause of action against Representative based on this Agreement or otherwise shall be to assert a separate cause of action or claim against Representative for damages. The failure of Representative to enforce any provision of this Agreement against Associate (or any provision of a similar agreement against any other person) shall not be construed as a waiver of any such provision, nor prevent Representative from thereafter enforcing such provision or any other provision of this Agreement. The parties acknowledge and agree that Zimmer and its parents, affiliates, subsidiaries, successors and assigns are express third party beneficiaries of this Agreement with an independent right to enforce any of its provisions and that Zimmer or Representative may enforce this Agreement regardless of whether the relationship between Representative and Zimmer or Associate is expired or terminated for any reason.

### 15. Entire Agreement.

This Agreement constitutes the complete understanding between the parties with respect to the subject matter thereof, and all prior representations or agreements relating thereto have been merged into this Agreement, excluding pre-existing non-competition and non-solicitation covenants between Associate and Representative. The terms of this Agreement shall control any conflicting provisions of any such prior covenants. No waiver, alteration or modification of any of the provisions of this Agreement shall be valid unless made in writing and signed by both parties.

### 16. Captions.

The captions appearing at the commencement of the sections hereof are descriptive only and for convenience of reference. Should there be any conflict between any such caption and the section at the head of which it appears, the provisions contained in such section will control and govern the construction of such section.

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of the date first written above.

RX MEDICAL, LLC

By: _____

Printed Name: Brandon Rouse

Title: President

ASSOCIATE

Name: _____

# EXHIBIT 1

## Territory

Team OKC (including but not limited to Oklahoma County, Cleveland County)